————O————

AMANDA E. GAINES, *et al.*, Respondents, *vs.* HORACE ALLEN, *et al.*, Appellants.

58 537
97 365

1. *Contract—Mortgage—Power of Sale—Error obvious on face of instrument—How construed.*—A .mortgage with power of sale recited that in case of default in payment of the mortgage debt "the party of the first part," (who according to the phraseology of the deed was the mortgagor,) should proceed to sell, and provided further, that the mortgagee, naming him, should apply the proceeds. *Held,* that the intention was to confer a power of sale on the mortgagee, and that the error was an obvious one on the face of the instrument; and that therefore, it did not require for its removal, the introduction of external evidence.

2. *Agency—Mortgage, sale under—Disability of mortgagee to purchase attaches to his agent.*—The same disability as to purchase at the mortgage sale attaches to the agent of the mortgagee for the collection of the debt as to the mortgagee himself.

3. *Mortgages—Sales by marshal—Agency—Right of mortgagee to purchase.*—Where a mortgage provides that the sale in case of default may be made by the mortgagee, or in case of his refusal to act, by the marshal, the mortgagee and marshal are, for the purposes of making the sale, co-trustees, and the mortgagee cannot, by refusing to make the sale, and thereby procuring it to be made by the marshal, relieve himself of his disability to purchase at the sale.

4. *Mortgages—Purchase at sale by mortgagee—Equity of redemption.*—It is the settled law that where a mortgagee buys the property, at a sale under the power given in the mortgage, the equity of redemption still subsists in the mortgagor.

*Appeal from Jackson Circuit Court.*

*J. Brumback with F. M. Black,* for Appellants.

I. The court may conjecture that by mistake "first part" was written for "second part." But the mistake has not been corrected. Until the instrument be reformed the contract can

be enforced only according to its terms, at law and in equity. The court acts on it as it is. (Linton vs. Boly, 12 Mo., 568; Young vs. Casson, 48 Mo., 262; McClurg vs. Phillips, 49 Mo., 316.) A court of chancery would not correct the mistake, no matter how clearly proved, because it was not necessary, and no proof could raise an equity for reformation. The mortgage could have been foreclosed under the statute, at law or in equity, as it is. As the marshal had a power to sell, it was not necessary that Allen should have one. (1 Sto. Eq. Jur., § 141; Henderson vs. Dickey, 35 Mo., 126.) There are cases where a mistake will be disregarded, even at law, and effect be given to the instrument the same as if the mistake had not been made, or it had been corrected. These are cases of clear and obvious mistake apparent on the face of the document, so that the paper corrects the error. This case is not, however, one of that class. (Wilson vs. Wilson, 5 H. of Lords, 66; Kerr on Fraud and Mistake, p. 417.) The object of the parties was to confer a power to foreclose the mortgage. This was done. Therefore a court of law neither would nor could by construction correct the alleged mistake, any more than a court of equity would or could. In neither case was there any reason for correcting the mistake, if any, so as to give a power different from the letter of the mortgage.

II. If Allen had power under the mortgage to sell, he had, too, the right to buy at Hayden's sale in person, or by Smith; and Smith, his agent, was not precluded from buying on his own account. "Where the power to sell is conferred upon a third person the *cestui que trust* may purchase as freely as any other person." (2 Am. Law Reg. N. S., 728, and cases cited; Miltenberger vs. Morrison, 46 Mo., 251.)

III. At most, Allen was in a double relation to the mortgagors. 1st. As creditor having a lien on the land as security. 2d. As trustee of a power to sell to pay the debt. He could act in virtue of either or both relations. He acted by reason of one relation. Why were his rights abridged because the other relation existed, when he did nothing by reason thereof? This was not like a purchase by one trustee from a co-trustee.

Allen and Hayden were not in any sense co-trustees. They could not act together in selling. Neither could control the other selling. Can any one doubt that Hayden could have bought if Allen had sold? The rule and the reason thereof, allowing a *cestui que trust* in an ordinary deed of trust to secure money, to buy, when the trustee sells, and a mortgagee to buy, when a sheriff sells on execution to foreclose a mortgage, applies in this case. (Kirkwood vs. Thompson, 2 De Gex, Jones & Smith, 613; Shaw vs. Bunny, *Id.*, p. 468 ; Chambers vs. Waters, 3 Sim. Ch. 42; Roberts vs. Fleming, 53 Ill., 196; Walthal vs. Rives, 34 Ala., 95; Harrison vs. Roberts, 6 Fla., 711, is to the same effect; Kerr on Fraud and Mistake, Am. ed. 1872, p. 162.)

*Woodson & Sheeley ; P. S. Brown ; Tichenor & Warner*, for Respondents.

I. Sales made by trustees being a harsh mode of disposing of the equity of redemption, should be watched by the courts with a jealous eye, and should not be sustained unless conducted in all fairness and integrity. (Good vs. Comfort, 39 Mo., 328.)

II. Allen by the mortgage had a power coupled with an interest. (Hunt vs. Rousmanier, 8 Wheat., 204 ; Barnum vs. Messerve, 8 Allen, 158.)

III. The marshal by the mortgage had simply a naked power to sell, and whether he acted or not depended upon the will of Allen. According to the position of defendants, if Allen wished to shirk the duties voluntarily assumed by him, and so rigidly imposed upon him when assumed, he had only to will that the marshal should act. Then in that event, he who carried in himself the legal title to the land in question (8 Allen, 158), and who was by the instrument compelled to distribute, in any event, the proceeds of the sale, could thereby divest himself of the power, simply, and then act in hostility to the interests of those who gave him the power and interest both ; at one time under the instrument he is bound by the strictest requirements, at another, and under the same in-

strument, when the mortgagees are "in a greater or less degree in the power and at the mercy of the creditor," (McNees vs. Swaney, *infra*,) by his own motion, no one consenting thereto, he is freed from all such obligations, and this too, in the face of the law which clearly says that when a trust is created and assumed it cannot lightly be thrown off. (1 Vol. Leading Cases in Equity ; Hare and Wallace Notes, 2d ed., 161.)

The defendants seem to argue that because Allen is not compelled to make the sale, but can direct another to make it, his trust ends when he so directs. By the act of the parties of the first part he is given a trust which he accepts, and having accepted he thereby binds himself to act not only for himself but for said parties; (Chesley vs. Chesley, 49 Mo., 540,) and in such a position it becomes his duty to make the land bring as much as possible, and his private interests are in no event to come in conflict with his duty; (McNees vs. Swaney, 50 Mo., 388; Thornton vs. Irwin, 43 Mo., 153,) yet, as claimed by defendants, Allen, by simply getting the marshal to make the sale, changes position and stands as other purchasers, interested to buy the land as cheaply as possible. But the law which says that a trustee or person standing in a situation of trust or confidence shall not purchase or deal with the subject matter of his trust for his own benefit, without the consent of his *cestui que trust* is absolute, universal and is subject to no qualification. (Conger vs. King, 11 Barb., 363; Armstrong vs. Houston's Heirs, 8 Ohio, 553; Thornton v. Irwin, *supra*.)

Under the mortgage in question the marshal derived his authority by the instrument itself and by the act of Allen requesting him to act.

IV. The expression in the condition of the mortgage "party of the first part" is plainly a clerical error and one that would be treated in a court of law as though it read "party of the second part:" if such would be the case in a suit at law, the reasons are much stronger that it should be so treated in equity. There was therefore no necessity for a

suit in equity to reform the same. (Kerr on Frauds and Mistakes, 417, and authorities cited.)

The mortgage conferred upon Allen or the marshal of the Kansas City Court of Common Pleas the power of sale, and upon Allen alone the power to distribute the money; he therefore became and was a trustee, and a purchase made by him at a sale made by the marshal, is voidable and will be set aside upon the application of the mortgagors, and they be allowed to redeem. (NcNees vs. Swaney, 50 Mo., 393; Johnson vs. Bennett, 39 Barb., 237; Voorhies vs. Presbyterian Ch., 8 Barb., 142,) and cases cited. It has been repeatedly held that when there are two or more trustees at a sale made by them, one of the trustees could not buy, even though a fair price was paid for the property. It may even be in excess of its value. (Davone vs. Fanning, 2 John. Ch., 261; Wade vs. Harber, 3 Yerg., 353.) In this case Allen and Hayden, were co-trustees. It is true that either could act. If Allen sold, Hayden had no authority or interest, but if Hayden, the then marshal, sold, Allen still had a duty to perform, coupled with an interest. Hayden under the deed could sell and make a deed that was all. He could not even retain so much money in his hands. (Campbell vs. Johnson, 1 Sandf., 148; Fox vs. McReth, White & Tudor's Leading Cases, vol. 1, top page 172, ed. of 1859, and Am. notes; Armstrong vs. Houston's Heirs, 8 Ohio, 562; Win vs. Dillon, 27 Miss., 494.)

V. There could be no reason for giving the power of sale to the mortgagors, who were the parties of the first part. They already possessed that power, and were fully authorized at any time to sell even before forfeiture. It was their land and they had the lawful right to sell at any time before the sale under the mortgage, and had they done so and paid the debt, then Allen's interest in the land ceased. The court could treat the deed as though it read "party of the second part," without first reforming the mortgage in suit expressly for that purpose. In Kerr on Fraud and Mistake, 417, it is clearly and distinctly stated, that where it is manifest on the face of the deed that a mistake was made, a court of law

would read the deed as though no mistake ever existed, or in other words would correct the mistake and not put the parties to the trouble and expense of a suit in equity to correct the deed. The author refers to a number of authorities to sustain him, and by an examination of these authorities, it will be seen that he is well supported.

WAGNER, Judge, delivered the opinion of the court.

Plaintiffs brought their suit in the Circuit Court to set aside a conveyance of real estate made under a power of sale in a mortgage, and praying to be allowed to redeem. On a hearing of the case, the deed of conveyance was set aside and the prayer granted. The plaintiffs are the heirs and representatives of the mortgagors, and it appears that in 1859, the mortgage was made to Horace Allen, one of the defendants, in consideration of a certain obligation made and executed by one of the parties of the first part. The condition in the mortgage was, that if the maker of the note should pay or cause to be paid the note and interest thereon, when the same became due and payable, then the conveyance was to be void, otherwise, it was to remain in full force and effect, and the party of the first part or the marshal of the Kansas City Court of Common Pleas, was empowered to proceed to sell the mortgaged property, or any part thereof, at public vendue to the highest bidder, for cash in hand, after giving thirty days' notice of the time, place and terms of sale. And it was further provided that the said Allen, should, with the proceeds of the sale, pay, first the expenses of the trust, and next, whatever might be in arrear and unpaid on the note, whether of principal, interest or damages, and the remainder, if any, was to be paid to the parties of the first part or their legal representatives.

It appears that defendant Allen, was a resident of the State of Ohio, and that Smith was his agent in Kansas City, that at the request of Smith, Hayden, who was the marshal of the Kansas City Court of Common Pleas, proceeded to execute the power conferred by the mortgage, by selling the land on

the 18th of April, 1862. At the sale, Smith became the purchaser for the sum of $3,600 and received a deed for the land. Smith, by deed dated June 24th, 1862, conveyed to Allen the same land for the recited consideration of $4,300. It is now contended, that neither Allen, the mortgagee, nor Smith his agent, held such relation to the mortgagors, as precluded either from buying at the sale made by Hayden, and that there are only two grounds on which it can be claimed that Allen was forbidden to buy ; first, that the mortgage gave him a power to sell, and second, that he was a trustee to dispose of and account for the proceeds of the sale made by Hayden.

The question is now raised, that the mortgage did not give Allen, who was the party of the second part, a power to sell. It is true the deed gives the power to "the said party of the first part" or the marshal of the Kansas City Court of Common Pleas. There was no attempt made to reform the deed on the ground of mistake ; but the court below obviously treated the recital "party of the first part" as a mere clerical error, and carried out what was the real intention of the parties. It was unnecessary to give the mortgagors the power to sell, for they already possessed that. All the subsequent recitals of the power given show unmistakeably that Allen, as the party of the second part, was the person to whom the power was given, and he is made the only person to receive and distribute the proceeds arising on a sale, and pay over any surplus that may exist to the mortgagors. The rule of law is that an agreement cannot be varied by external evidence ; and that the parties are bound by the document which they have signed and accepted as their agreement, unless there be error on the face of it, so obvious as to leave no doubt of the intention of the parties, without the assistance of external evidence. (Kerr on Fraud and Mistake, p. 417.)

The principle is well illustrated by a case referred to in the King's Bench, decided at an early day. A bond was executed with a condition that the bond was to be void, if a party did not pay a sum of money at a given day. The man who had given the bond, insisted upon a literal performance. He said,

the condition is, "if I do not pay, and I have not paid and therefore, the bond is void." But the court said that it was an obvious error, and therefore that the "not" was to be rejected; and the bond was to be void if the man did pay. (Anonymous in Bach vs. Proctor, 1 Dougl., 384, per Buller J.)

There was no question about going contrary to the intention. It was a question of construction. If such is the rule at law, there can be no question about its being resorted to in a court of equity.

In the present case, the error is on the face of the instrument; it is patent and does not require for its removal the assistance of external evidence. The sale to Smith was really a sale to Allen. The agent for collection possessed the same powers that his principal did. What is done by the agent, is done by the principal. If Allen could not purchase so as to cut off the equity of redemption, neither could Smith acting as his agent do so. It is not pretended that Smith paid any money to the marshal, when the sale was made. He credited the amount on Allen's note. The expenses attending the sale were not paid.

We are now brought to the further inquiry, could Allen by a neglect or refusal to execute the power, and devolving the trust upon marshal Hayden, absolve himself from his character of trustee, so as to acquire the absolute fee by buying in the property? By the terms of the instrument, rightfully interpreted, Allen and Hayden were constituted for the purposes of making the sale, co-trustees, with an alternative power in each, to execute the trust. It is a familiar doctrine that one trustee cannot purchase at a sale, made by his co-trustees. If he does, his purchase may be avoided. Any other rule would lead to connivance and fraud. The mortgagee or trustee, might, when a favorable opportunity presented itself, abrogate his fiduciary character, in behalf of the other person named to sell, and reap an unconscionable advantage.

It might be difficult to prove positive or active fraud, and therefore, the wisest policy is, to stop the temptation by placing upon it a total disability. But it was never intended, that

Gaines, et al. v. Allen, et al.

because Hayden exercised the naked power of sale vested in him, therefore Allen should cease to have any further connection with the trust, and be at liberty to act as any other disinterested person.   The deed, after giving either Allen or Hayden the power to sell, provides, not that Hayden should do anything more, but that Allen should, with the proceeds, do what mortgagees or trustees ordinarily do, namely, pay the expenses of the trust, then satisfy the note and interest, and the remainder, if any, pay over to the mortgagors in the deed.   It is manifest that he was regarded as the principal trustee throughout, in whom mainly the trust and confidence was reposed, and he cannot therefore be distinguished from the ordinary case of a mortgagee, with power to sell, and as such, clothed with all the rights and disabilities incident to that relation.   That when under such circumstances a mortgagee buys in the property at his own sale, the equity of redemption still subsists in the creditor, has long been an established principle in this court. (McNess vs. Swaney, 50 Mo., 388 ; Reddick vs. Gressman, 49 Mo., 389; Thornton vs. Irwin, 43 Mo., 153 ; Allen vs. Ransan, 44 Mo., 263.)

Having reached this conclusion it is unnecessary to particularly examine the mass of testimony in reference to the value of the property, and the price at which it was sold. The allegations in the bill, of fraud on the part of Allen, were not sustained, and it was no objection that he selected an unseasonable time, when property was greatly depressed in value, to make the sale. His debt was past due, and he had the right to coerce its payment, provided he resorted to no sinister or undue means.   But for the reasons above stated, the sale under the circumstances did not deprive the creditor of the equity of redemption.

The judgment therefore must be affirmed ; Judges Napton and Sherwood concur ; Judges Vories and Hough not sitting.