# F. M. ARNETT et al. v. C. C. WILLIAMS, Appellant.

### Division One, March 1, 1910.

1. **DEED OF TRUST: No Power to Trustee.** A deed of trust cannot be foreclosed by newspaper notice unless the power of the trustee to act is given expressly or by necessary implication by the instrument itself. If the instrument grants the title to the holder of the note and not to the trustee, neither the trustee named nor a substitute sheriff has power to sell upon newspaper notice.

2. ————: ————: **Foreclosure By "Said Sheriff."** The form of the deed of trust provided for three parties, and named the owners of the land as parties of the first part, the payee of the note as party of the second part, and one Riddle, trustee, as party of the third part, and recited that in consideration of the debt ($72.95) "to be paid by the said party of the second part," the "said sheriff or in the event of his sickness, death, absence from the county or other disability or refusal to act, the then acting sheriff, upon request of the holder of said note, shall sell the property." "Said sheriff" was not named, and there was no *habendum* clause. Riddle refused to act, and the acting sheriff sold upon newspaper notice and the only bid was one by the sheriff for the holder of the note for the amount of the debt and costs. *Held*, that the instrument cannot be said to be an unmistakable grant to Riddle, and therefore the party of the third part (Riddle) cannot be treated as the party of the second part, and the mortgage could not be foreclosed upon a newspaper notice, but only, if at all, upon a reformation by or foreclosure in equity; and the sale should be set aside upon condition that the debt, interest and costs are paid.

3. ————: **Redemption.** The statutes (Secs. 4343 and 4344, R. S. 1899) providing for redemption from sales under mortgages and deeds of trust, do not apply to equity cases to set aside trustees' sales and deeds inoperative to pass title because of irregularities.

4. **PRACTICE: Death of Respondent: Revivor.** Where the subject-matter is real estate, and a plaintiff, who had only a curtesy interest, has died since defendant appealed, and all heirs are parties and his interest has fallen in, a revivor would be an idle ceremony, and the decree below, being right, will be modified by striking his name from the record, and so modified will be affirmed.

Appeal from St. Clair Circuit Court.—*Hon. C. A. Denton,* Judge.

AFFIRMED (*as modified*).

*H. T. Williams* for appellant.

(1) The deed of trust explicitly names George M. Riddle, trustee, and he covenants to perform the trust. He drew the trust deed himself. It clearly appears upon the deed that J. M. Offield was the payee of the note secured, and the beneficiary under the deed. The deed was valid in all respects as a deed of trust with power of sale in the trustee, and, upon his absence or refusal to act, in the sheriff. Hence, foreclosure by advertisement and sale was the proper method. Gaines v. Allen, 58 Mo. 537; Boyce v. Sykes, 97 Mo. 362; 2 Jones, Mort. (4 Ed.), secs. 1781, 1785, 1777, 1773, 1779; Deal v. Cooper, 94 Mo. 62. This court held 'that to be an obvious clerical error in view of the entire instrument and that the power was lodged with the mortgagee notwithstanding. The sheriff had a right to make the sale though the title was in the grantee. 2 Jones, Mort. (4 Ed.), sec. 1779. No particular form of words conferring the power are necessary. 2 Jones, Mort., sec. 1778. The holder of the note may leave a bid with the sheriff. 2 Jones, Mort. (4 Ed.), p. 679. (2) It is only where the power of sale is lodged with and exercised by the mortgagee that redemption is allowed when the mortgagee buys. The power of sale was here, not in Offield nor his assigns, but by the express terms of the instrument, it was in Riddle, trustee, and after him in the sheriff. The sheriff made the sale as provided in the instrument. Redemption was necessarily foreclosed thereby. If respondents had any right to redeem, it was under the statutes, and this remedy has been ignored. R. S. 1899, secs. 4355, 4343, 4344; Walmsley v. Dougherty, 163 Mo. 298. (3) The intent of the original deed of

trust from Mary Arnett and F. M. Arnett to George
M. Riddle, trustee for J. M. Offield, is plain upon its
face and was clearly understood by the parties thereto.
Obvious clerical errors are not to be taken advantage
of by interested parties years thereafter to defeat their
deeds in writing solemnly executed under the forms
of law, clearly understood by them at the time, from
which they have derived advantage and upon the face
of which, taken in their entirety, the intention is mani-
fest. Foreclosure by advertisement and sale was the
proper method.

*Montgomery & Montgomery* and *A. L. Shortridge*
for respondents.

(1) Sale under a power in a deed of trust or
mortgage is a harsh mode of foreclosing the rights
of the mortgagor. Such sales are scrutinized by courts
with great care. The power of sale must be clearly
conferred and strictly pursued. Polliham v. Reveley,
181 Mo. 622; Wolff v. Ward, 104 Mo. 127. A power
of sale is not clearly conferred upon the sheriff of St.
Clair county. (2) The notice of sale "shall be given
by advertisement in some weekly newspaper published
in such county for three successive weeks, the last in-
sertion to be not more than one week prior to the day
of sale." R. S. 1899, sec. 4355. Because of the failure
to so advertise, the sale did not convey the equity of
redemption of the plaintiffs. Wolff v. Ward, 104 Mo.
150. (3) The courts will ignore an obvious clerical
error; and where the contract admits of construction
will construe it in accordance with the plain intention
of the parties; nevertheless, the courts will not do vio-
lence to the written words of a contract beyond cor-
recting an obvious clerical error, except upon a bill
filed for that purpose. Rackliffe v. Seal, 36 Mo. 317;
McMeel v. O'Connor, 32 Pac. 182. It is impossible to
gather from the deed of trust whether the grantors
intended to vest the power of sale in Offield, to whom

the conveyance was made, or in Riddle, the alleged trustee, or in the sheriff of Pettis county. (4) The right of redemption may be asserted at any time within ten years. Mere delay is not laches. Hendrix v. Calloway, 211 Mo. 566; Spurlock v. Sproule, 72 Mo. 510. Even if mere unexplained delay were laches, the delay here is accounted for by the fact that Williams never claimed adversely to plaintiffs until a few days before the suit was brought. As soon as an adverse claim was asserted the action was brought. (5) That a conveyance absolute on its face is in fact a mortgage may be proved by parol evidence. Reilly v. Cullen, 159 Mo. 322; Book v. Beasly, 138 Mo. 455.

LAMM, P. J.—From a decree of the St. Clair Circuit Court, setting aside a trustee's sale of 160 acres of land in St. Clair county, a trustee's deed to the purchaser and a deed from the latter to Williams, upon terms imposed as the price of the decree, to-wit, the payment of the secured debt, interest, expenses of the sale, etc., Williams appeals.

The sale was made on the 27th day of November, 1899, by Decherd, then sheriff of St. Clair county, under a deed of trust dated February 26, 1896. The title to the land then stood in Mary A. Arnett, a married woman—her husband being a tenant by the curtesy. She and F. M., her husband, executed the deed of trust to secure a small note ($72.95) to one Offield as boot in a swap of properties. At the time of foreclosure Williams held the secured note and Mary A. Arnett was dead. The plaintiffs are F. M. and two of the daughters of Mary A. The defendants are Williams (who alone appeals), another daughter of Mrs. Arnett and the widow and descendants of a deceased son. Williams got title, such as it is, through the trustee's sale by a mesne conveyance from F. M. Arnett, the purchaser. Arnett's name was used as purchaser by Williams, Arnett paying nothing on his bid and Williams

paying nothing to Arnett for his conveyance—the bid
($97.50) being credited on the secured note by order
of Williams and the express consideration in the deed
from Arnett to Williams being $1800, a dignified (but
mythical) sum named by himself.

Plaintiffs sue in equity, proceeding on two theories
—one of them, that the trustee's sale 'was colorable
only and was brought about by Williams and F. M.
Arnett under such circumstances and understanding
that Williams holds his title seized to the use of
Arnett and the heirs of Mrs. Arnett, subject to the
original debt plus expenses and outlay. This phase of
the case is developed at length on all sides. The equit-
able conditions said to entitle plaintiffs to set the sale
aside and avoid the deeds as absolute conveyances by
impressing them with an implied trust are asserted
and denied respectively (*mutatis, mutandis*) vehement-
ly by plaintiffs and Williams. But unless we find
against plaintiffs on the second theory of the case, an
investigation and determination of the implied trust
theory will not be necessary.

The second theory is this: It is alleged, in effect,
by the bill that the sheriff of St. Clair county had no
donation of power to execute the trust, the deed of
trust holding no such terms and being so irregular
as not to be enforceable by a sale under a newspaper
notice, but only on reformation by, or foreclosure in,
equity. In his decree the chancellor, *inter alia,* found
facts warranting relief on this second theory as well
as on the first. If, then, his decree can stand on either
foot it is well enough; for if we hold with the chan-
cellor, in effect, that there was no donation of power
to the sheriff of St. Clair county to execute the trust
because of inherent and patent defects in the deed
of trust, it follows that the sale was mummery; that
the legal title did not pass; that the trustee's deed
and conveyance from the nominal purchaser, Arnett,

to Williams fall; and that Williams got equity through
the decree, neither more nor less, *viz.,* his debt, interest,
outlays and expenses, found and decreed to be $172.50.

Attending to the deed of trust: It provides for
three parties, *viz.,* one of the first part, one of the
second, and one of the third. The draftsman, we take
it, had not come from "a deed of trust state." At
any rate, the record shows he 'was only familiar with
mortgages giving power of sale to the mortgagee, *i. e.,*
the beneficiary, and not to a trustee, to whom the
legal title was conveyed for the purposes of the trust,
such as are in vogue in Missouri. Accordingly, after
making the Arnetts parties of the first part, instead
of making the trustee party of the second part, he
wrote into that clause of the deed of trust the name
of "J. M. Offield," the beneficiary, and into the blank
provided for the beneficiary he wrote "Geo. M. Riddle,
trustee." Instead of providing the usual nominal con-
sideration as moving from the trustee, which together
with the debt and trust mentioned and created, would
support the conveyance, he wrote into the deed the
consideration of $72.95 "to be paid by the said party
of the second part" (that is, Offield) to the parties of
the first part and goes on to say that the parties of
the first part acknowledged the receipt of that sum and
in consideration thereof they "do grant, bargain and
sell" by these presents "unto the said party of the
second part" (that is, Offield) "and his heirs and as-
signs forever the following described tract of land sit-
uated in the county of St. Clair in the State of Mis-
souri, to-wit, the east half of the northwest quarter
and the north half of the southwest quarter of section
14, township 38, range 27, containing 160 acres." It
next says that the foregoing land is conveyed to the
second party "with all rights, privileges and appur-
tenances thereto belonging"—waiving, releasing and
relinquishing unto said second party all claims, benefits
and estate pertaining to the exemptions of homesteads.

It next comes to designate and define the trust, reciting that Mrs. Arnett on the 26th of February, 1896, made and delivered to one J. M. Offield one promissory note for $72.95 due February 27, 1897, with interest at eight per cent per annum until paid; and providing that if Mrs. Arnett or her executors or administrators pay the principal and interest of the note when the note becomes due then the deed shall be void and the property conveyed is to be released at the expense of the Arnetts. Then comes this significant clause: "but otherwise this deed shall remain in full force, and the said *sheriff* or in the event of his sickness, death or absence from the county of ————— or other disability or refusal to act, *the then acting sheriff of St. Clair county,* Missouri, upon request of the holder of said note, his agent or attorney, shall sell the property," etc.

The deed of trust was not signed by Geo. M. Riddle, trustee, but winds up with the following clause: "And the said Geo. M. Riddle, trustee as aforesaid, covenants and agrees faithfully to perform and fulfill the trust herein created." The last clause is in print with a blank for the name, in which blank "Geo. M. Riddle" is inserted.

The deed has no to-have-and-to-hold clause, so that, in this instance, the granting clause to Offield cannot be illuminated or modified by an *habendum-et-tenendum* clause to Riddle, trustee—a course held allowable under modern rules of construction. [Buxton v. Kroeger, 219 Mo. l. c. 246 *et seq.,* and cases cited.]

It will be observed that the sheriff of St. Clair county was to act only on a contingency, *viz.,* in the event of the sickness, death or absence "from the county of ————— or other disability or refusal to act" of some person. Now, who was that person? Riddle, trustee? Not at all—it was "*said sheriff.*" If there had been a blank in the deed for the name of the party who was to refuse to act then by inter-

pretation, if the context aided us, we might have read into that blank the name "Riddle." We do not say that having so read "Riddle" in it would have been sufficient to overcome the operative force and effect of the granting clause which put the legal title in Offield and not in the trustee, but it would have helped a little to construe the instrument. Even that help is denied us in this instance, because, for some inscrutable reason, there is written into this deed the proviso that before the "acting sheriff" of St. Clair county can act the "said sheriff" shall be sick, dead, absent or be disabled or refuse to act. Who was the "said sheriff?" No sheriff is mentioned before that in the deed and the draftsman evidently had a mental conception he never bodied forth. The truth is that to make this a perfect deed of trust putting the legal title for the purposes of the trust in Riddle, trustee, and giving the acting sheriff of St. Clair county power to execute the trust in the contingency of his absence or refusal to act, we would have to *construct*, rather than *construe*, the deed itself. A court of chancery has power to reform the instrument because of mutual mistake or to enforce it as an equitable mortgage by its decree of foreclosure, but we are not willing to write it down as good law that a deed of trust may be foreclosed by newspaper notice, unless the power of the trustee to act is given either expressly or by necessary implication by the instrument itself.

In this case Riddle declined to serve and, based on that declination, the acting sheriff of St. Clair county undertook to execute the trust and pass the legal title. The patent mistakes and jumbles of the deed were such that the foreclosure by such sheriff was bound to depress and chill bidding or prevent it out-and-out. Precisely that natural result followed. No by-stander risked a penny at the sale. Williams and F. M. Arnett resided at Sedalia, a great way off. Neither of them were present. It does not appear

that the heirs of Mrs. Arnett knew of the sale. Williams cast an anchor to the windward by leaving a bid with the sheriff either by telephone or letter—that is, he told him to start the bidding at the amount of the debt and costs. The sheriff did so. Outside of that voiceless bid there was no other. The testimony differs as usual on the value of the land. The lowest estimate on behalf of defendant puts it at $200. The highest estimate of plaintiffs' witnesses made it worth, say, $800. The great weight of the testimony made it worth from $400 to $600. The farm therefore passed under the hammer at public outcry on a perfunctory bid of an absent bidder at $97.50—a result to be expected from a newspaper foreclosure of such a deed of trust.

The main rule for interpreting an instrument is to gather the intention of the parties from the entire paper. Another good rule is that there is no need to resort to equity to perform or perfect it if its meaning is obvious on its face. To this end, it is allowed as good doctrine that a "clerical error," that is, a slip of the pen, will not control its construction and may be disregarded. But the defects in this instrument were not mere clerical errors and slips of the pen. To the contrary, they were grave mistakes of law or fact or both, arising from misconceptions or lack of knowledge in the draftsman. The mistakes or slips in this instrument were not so much slips of the pen as of the mind, they were erroneous or confused mental conceptions influencing the will of the draftsman and led up to his act in drafting a confused and imperfect instrument.

If the deed had by subsequent recitals shown "unmistakably," as in the case of Gaines v. Allen, 58 Mo. 537, that the grant was to Riddle and not to Offield, we might treat the party of the third part as the party of the second part and their transposition as a mere clerical error, as was done in that case, but the

after recitals of this deed do not aid us or show such fact unmistakably — *contra,* they make "confusion worse confounded," they throw a shadow rather than light.

If in a trilateral deed the party of the second part, *viz.,* the trustee, be not named at all, then, absent other faults, if the blank intending to carry his name be left blank and if the trustee accept the trust by signing the deed, as in Boyce v. Sikes, 97 Mo. 362, there might be no necessity to go into equity for reformation or for foreclosure, as held in that case. There the signature of the trustee healed the omission of his name in the clause relating to the second party.

We think this case is controlled by Rackliffe v. Seal, 36 Mo. 317, a case followed in Jones v. Shepley, 90 Mo. l. c. 313. See, also, McMeel v. O'Connor, 3 Colo. App. 113, 32 Pac. 182.

It is argued by learned counsel for appellant that plaintiffs were not entitled to redeem except under the statutes providing for redemption from mortgage and deeds of trust sales, Revised Statutes 1899, sections 4343 and 4344, and that they did not comply with the mandate of those statutes. This argument inadvertently travels on a misapprehension. Those statutes provide for redemption *as of course.* They are not intended to apply to equity cases to set aside trustees' sales and the deeds following as inoperative to pass title because of irregularities and where redemption is the mere price put upon the decree in order to do equity. It is doubtful whether under our Constitution the jurisdiction of courts of equity as handed down by the fathers and as existing at the time the Constitution was made can be whittled away, in fractions at a time, by legislative enactment. But assuming, *arguendo,* it may be done, then, at the very least, to oust the jurisdiction of courts of equity in cases of equitable cognizance, the legislation claimed to have that effect must get at its result by express enactment or by in-

exorable implication. [1 Story, Eq. (13 Ed.), sec. 64 i, p. 69 et seq.; Hudson v. Wright, 204 Mo. l. c. 423 et seq.; Baldwin v. Davidson, 139 Mo. l. c. 126-7; Hubbard v. Slavens, 218 Mo. l. c. 619; Const. of Mo., sec. 1, art. 6.]

Under this record, there are no laches (Rutter v. Carothers, just handed down, 223 Mo. 631). Appellant demurred generally and specially to plaintiffs' bill, and, unfortunate below, saved the point and now assigns error thereon. The demurrer, as we see it, strikes at that phase of the bill relating to an alleged implied trust. As we have not passed on that phase of the case, we pass the point itself.

It is said in respondents' brief that F. M. Arnett is dead. They also suggested his death, ore tenus. The fact is not gainsaid or disputed by appellant's brief or by his counsel at our bar. The subject-matter being real property and his estate by curtesy having fallen in, and all heirs being parties to this proceeding already, a formal revivor would be an idle ceremony.

The decree below will be modified by striking his name from the record and, as modified, affirmed. My brethren all agreeing, it is so ordered.