MARY E. McNATT, ORA McNATT and MINNIE McNATT, Appellants, v. THE MAXWELL INVESTMENT COMPANY, a Corporation, THE GUARANTY TRUST COMPANY, a Corporation as Trustee, THE PRESIDENT AND FELLOWS OF MIDDLEBURY COLLEGE OF ADDISON COUNTY, a Corporation, A. N. HENSLEY, Trustee, MATTIE M. WILLIAMS and FRANK WILLIAMS.—50 S. W. (2d) 1040.

Division Two, June 10, 1932.*

*J. B. McGuffin* and *H. H. Bloss* for appellants.

---

*NOTE: Opinion filed at October Term, 1931; April 8, 1932; motion for rehearing filed; motion overruled at April Term, June 10, 1932.

*James E. Sater* and *McNatt & McPherson* for respondents.

WHITE, P. J.—An action to set aside a sale made under the power in deed of trust, and cancel deeds made in pursuance of such sale.

The plaintiffs, the three McNatt sisters, unmarried, were owners of ninety-one and a fraction acres of land in Lawrence County. C. V. Wheat, a relative of the plaintiffs, was conducting business under the name of the Southwest Mortgage Company. March 1, 1923, the plaintiffs obtained through Wheat a loan of $3,300 from the Maxwell Investment Company of Kansas City, secured by deed of trust on the land with the Guaranty Trust Company as trustee. The principal note bore six per cent interest, payable annually, shown by coupons each for $198, running for the life of the loan which matured March 1, 1928.

A second mortgage was made to secure commission notes, five in number, of thirty-three dollars each, payable annually on the first

678

of March of each year. The first mortgage was sold to the President and Fellows of Middlebury College of Addison County, Vermont, a corporation. It appears without dispute that the interest coupons on the first mortgage were paid for three years, and that the first three commission notes were paid at their maturity. The commission deed of trust was foreclosed under the power of sale for alleged default in the last two commission notes, April 6, 1929, and bought in for the sum of $75 by the Maxwell Investment Company. This was more than a year after the note secured by the first mortgage became due and after the maturity of the fifth and last commission note secured by the second mortgage. It is this sale which the plaintiffs seek to set aside, together with all conveyances made in pursuance of it.

The Maxwell Investment Company, April 8, 1929, conveyed the title acquired by the sale to the President and Fellows of Middlebury College of Addison County, Vermont. This deed contains an anti-merger clause to prevent the merger of the mortgage held by the grantee with the fee. The President and Fellows of Middlebury College, June 4, 1929, by special warranty, conveyed the property to Mattie M. Williams, defendant. The plaintiffs claimed that the last two commission notes had been paid before the foreclosure sale.

■ I. Whether, as plaintiffs claimed, the last two commission notes had in fact been paid is determined by an interpretation of the evidence. When the first mortgage fell due March 1, 1928, there was due as follows:

First mortgage principal note, ..................$3,300.00
Two interest coupons ......................... 396.00
Eight per cent interest on interest note due 1927 .. 15.84
Two commission notes ....................... 66.00

$3,777.84

Several alleged payments to reduce that amount will be noted.

In 1927, exact date not given in abstract of the record, one Long, representing the Commerce Trust Company, took from the plaintiffs a note for $247, secured by a chattel mortgage on plaintiff's growing corn. It is not claimed that this mortgage paid any part of the principal or interest on the other debts but was merely additional security. The payments made by the plaintiffs and practically all correspondence had by plaintiffs in relation to indebtedness and extensions and payments thereon was with the Commerce Trust Company which handled the matter for the holders of the notes.

C. V. Wheat had received the money for previous payments for the plaintiffs and had remitted it to the Commerce Trust Company. After the default of interest in 1927, the Commerce Trust Company began to make demands for the payment of the interest due and the commission notes claimed to be in default. On that chattel mortgage

Wheat, December 22, 1927, collected $37; February 16, 1928, he received $42 and gave plaintiffs his receipts. Plaintiffs claim that those payments discharged the last two commission notes and satisfied the second mortgage which was afterwards foreclosed. The first receipt for $37 was for money sent to the Commerce Trust Company and applied on the interest coupon due on the first mortgage and not upon the commission note. The $42 received by Wheat, was never transmitted to the holder of any of the notes but was retained by Wheat. Plaintiffs claim that Wheat's receipt of the money is binding upon the defendants, claiming he was agent of the Commerce Trust Company. That matter will be considered below. The point to determine here is whether in fact the $37, or the $42, was intended to be applied upon the commission notes. The receipt for the $37 is as follows:

"December 28, 1927.
"Received of McNatt Sisters.        Thirty-seven dollars
"S. W. Loan interest.        C. V. WHEAT.
"$37.00."

The receipt for payment of the $42, reads as follows:

"Feb. 16th, 1928
"Received of McNatt Sisters.        Forty-two dollars
"on interest on farm loan
"$42.00        SOUTHWEST MORTGAGE COMPANY,
"C. V. WHEAT."

Here was the receipt in each payment reciting that it is to be applied on *interest*, the latter reciting "on farm loan." The $37 was applied on interest coupon due March, 1927. The $42 never having been received was not applied at all. The plaintiffs took the receipts without objection to their form and never complained of a misapplication until this suit was brought.

W. E. Graves, Assistant Secretary of Commerce Trust Company wrote to the plaintiffs March 28, 1928, nearly a month after the principal debt and the last commission note were due, as follows:

"Commerce Trust Company
"Kansas City, Mo., March 28th, 1928.
"Miss Mary McNatt,
"Verona, Mo., In re SW 21676 McNatt Sisters.
"Dear Madam:
"In connection with the above numbered $3,300 loan which is secured by your 91.66 acres in Lawrence County, Missouri, we have received no additional funds on account of the delinquent items.

"On December 29, 1927, we received $37.00 which was applied as payment on account of the $198.00 due March 1st, 1927. We had a letter from C. V. Wheat stating that you had been in his office and were arranging for some additional money to be sent to us.

"We would like to ask you just how much money you have left with Mr. Wheat since Dec. 29, which was the last date the $37.00 was received. If you have left any additional money with him we must ask you to get it from him and send to us in the self-addressed, stamped envelope which is enclosed.

"Unless something is done at very early date, it would seem that foreclosure would be necessary.

"Very truly yours,
"W. E. GRAVES,
"Assistant Secretary."

On this letter the following memorandum was made in Wheat's handwriting:

"Paid Mr. Wheat $37.00 and $42.00 as he wrote you and he has arranged for money to catch up the interest. I would that the loan of $3300 could be extended until Oct. 15th, 1928, but cannot borrow the money unless he has a statement in writing from you people that the loan will be extended if the interest is paid."

Then followed this memorandum made in the handwriting of one of the plaintiffs:

"We are very anxious to get this business settled favorable for all and would appreciate an early reply granting an extension of the loan to October 15th, 1928, the money is ready as soon as an extension of the loan is made."

Here it will be noted that Mr. Graves informed the plaintiffs that the $37 was applied on the $198 interest due March 1, 1927. They knew it was not applied on the commission note. made no objection, understood the letter, and asks for an extension of the loan of $3,300 which was overdue until October 15, 1928, saying that the money would be ready as soon as the extension loan could be made. At the same time they were informed that Mr. Wheat had not remitted the $42, and were directed to get any money left with him and send it in. Their receipts showed that neither of those sums was applied on the commission notes and the letter of Graves showed that neither was so applied, but applied on past due interest on the main note. So, up to the time that the first mortgage fell due and the last two commission notes were in default, we are unable to find that anything had been paid on them.

On March 15, 1928, fifteen days after the notes were all due, the plaintiffs signed a note payable to the Southwest Mortgage Company (which was C. V. Wheat) for $400, secured by a third deed of trust on the land. C. V. Wheat never notified the Commerce Trust Company nor anyone holding any of the indebtedness, about this, but simply held the note. There is nothing to show that the plaintiffs expected that mortgage to be in payment of any part of the indebtedness. They expected to get money on it to apply on the original

debts. On April 21, 1928, Lydia McNatt, a sister of plaintiffs, made her check to Wheat for $400, and took up the note. The proceeds of that check were retained by Wheat and plaintiff claims that it was therefore payment on some part of the indebtedness.

Ora McNatt, one of the plaintiffs, testifying in relation to that $400, claimed that she understood it was to be applied on the interest coupons, and that the commission notes had been paid by the $37 and the $42 payments mentioned above, although the $42 was paid to Wheat before the last commission note was due.

Correspondence followed all through the year 1928, up to the foreclosure in 1929. On August 30, 1928, Graves wrote to Mary McNatt complaining that the delinquencies in connection with the $3,300 note had not been paid, threatened foreclosure, and asked for answer by return mail.

On September 12, 1928, he wrote to Miss Mary E. McNatt saying that both the principal and the interest on the $3,300 note were in default and they must pay not only the delinquent items but secure another loan with which to pay the principal, that the investor was not willing to wait any longer.

In reply to that letter S. A. Lutty, Verona, Missouri, wrote to William E. Graves, saying that he would make arrangements to have the money in thirty days.

On another page of the same letter the McNatt sisters wrote that they expected to have the money in thirty days to meet the delinquencies in full. September 18, 1928, Graves wrote to Lutty, as follows:
"Mr. S. A. Lutty,
"Verona, Missouri.
"Dear Sir:
"In re: SW 21676 McNatt Sisters
"We have your favor of the 15th inst. advising that by October 15 arrangements will have been made whereby the above numbered $3,300 loan, together with delinquencies would be taken care of by you, with the understanding that these items will be paid not later than that date, we are making our records accordingly.
"The items in default are as follows:

| | |
|---|---|
| Bal. of interest due March 1, 1927 | 161.00 |
| Com. installment due March 1, 1927 | 33.00 |
| Interest due March 1, 1928 | 198.00 |
| Com. installment due March 1, 1928 | 33.00 |
| Principal due March 1, 1928 | 3,300.00 |

"All of these items are bearing 8 per cent interest from their maturities and on the item of interest which became due March 1, 1927, and originally amounted to $198, we received $37 to apply thereon on December 29, 1927.

"The data as given herein will enable you to figure the penalty

interest accordingly. It occurs to us, however, that you would like to pay at this time the *delinquent interest items* and we will appreciate receiving from you remittance in the proper amount. A self addressed envelope for your reply and remittance is enclosed herewith.

"Yours very truly,

"WEG:ZSF                                Asst. Secretary."

Here again the plaintiffs were notified that the $37 which Wheat had previously remitted was applied on the interest coupon due in March, 1927, reducing the amount due on it to $161. There was no protest or claim that it should have been applied on the commission notes. This letter also conveys to them the information that the $42 they had paid to Wheat had not been remitted to the Commerce Trust Company and neither had the $400 which Wheat had received as the proceeds of the third mortgage six months before. It may be noted here that the plaintiffs did not know what had become of that $400 note which they made to Wheat; did not know that their sister had bought it for $400, or that Wheat had had the money for six months. The plaintiffs made no inquiry about it; made no protest when Graves wrote this letter of September 18th, showing that $400 and the $42 had never been received.

We come now to the situation when the foreclosure took place in April, 1929, more than a year after everything was due.

At that time the principal note secured by first mortgage was due ................................................$3,300

Two interest coupons due and unpaid ....................  396

Interest on the principal for a year and 1 month ..........  286

Two commission notes secured by second mortgage ........   66

_____

$4,026

The above does not include interest on the past due interest notes and commission notes.

Appellants claim that at that time there had been paid under a lease by one Fred Pfitzner, 200 bushels of corn, worth $100. And that Mr. Long had secured on the chattel mortgage corn sold for $58. Thus plaintiffs claim the following payments had been made at the time of the foreclosure:

"Dec. 29th, 1927 ....................................$ 37.00

"Exhibit 5, Wheat's receipt, dated Feb'y 16th, 1928 ....  42.00

"Check by Lida McNatt, dated April 21st, 1928 ......  400.00

"Under the Fred Pfitzner lease of 19, 200 Bus. corn at
    50c per bushel ..................................  100.00

"Under the chattel mortgage which Mr. Long secured for
    $247.00, corn sold .............................   58.00

_____

"Total receipts .....................................$637.00"

■ The appellant puts these figures forward as sufficient to pay all that was delinquent at the time the mortgage fell due. If all of those sums had been received by the mortgagees the amount was not sufficient to meet the interest due on the principal note. The trial court was justified in finding from the evidence that none of those items were applied on the last two commission notes then due. Assuming that Wheat was the agent of the mortgagee and authorized to collect debts as noted above, the $37 and $42 by the receipts given is on the payment of interest, not commission notes. Those payments were made before the last commission note was due, and would naturally be applied on items that were due. The $58 item was said by Ora McNatt to have been collected on the corn crop, covered by the $247 and mortgage, "which *they* held and that was applied on this debt." "They," we presume, means the parties who held the note. That vague statement is the only explanation of that $58. The mortgagees never received it. If the money was paid to anyone it was paid to Wheat and converted like the rest of the sums which he converted. There is nothing in the record that we can find to indicate that it was directed to be paid on the commission notes. The $100 item for the 200 bushels of corn is wholly unexplained. There is no evidence that it was ever collected from the sale of corn, and if it was there is nothing to show any directions to apply on the commission notes. There remains the $400 item. On the check which Lydia McNatt gave April 21, 1928, for the $400, when she took up that $400 mortgage was this item:

"For loan on McNatt sisters

"A second mortgage for *deferred payment on 1st mortgage.*"

They called the $400 mortgage a *second* mortgage although it was the third. Ora McNatt testifying, said:

"Mr. Wheat secured the $400 from our sister *on the second mortgage* that we gave for that purpose."

Lydia McNatt testified that the entry on the check was all in her own handwriting, and, explaining it said: "But that is the purpose." That statement can mean nothing else than that the $400 was to be applied on the first mortgage.

Ora McNatt said about that matter: "We made a payment of $400 on the second mortgage." That could not be true because the balance on the second mortgage amounted to only $66 when the $400 mortgage was made. She meant, of course, that by reason of the $400 mortgage they made a payment of $400. That is the only reasonable explanation. The court, assuming that Wheat was the agent of the defendants, was justified upon this evidence in finding that there had been no payment made upon the last two commission notes in default of which the second mortgage was foreclosed. A foreclosure might have been made at that time on the first mortgage, but the second was foreclosed, possibly because less expensive in trustee's commission.

■ II. But the evidence authorized a finding that Wheat was *not* the agent of the mortgagees. It is true that he negotiated the loan for the plaintiffs because in the first instance he was their relative; he was a broker trading under the name of Southwest Mortgage Company. He negotiated the loan to Maxwell Investment Company through the Guaranty Trust Company. But that fact would not make him the agent of the loan company. [Brants v. Runnels, 26 S. W. (2d) 1004, l. c. 1007.] It is true, as appellants assert, that for three years all installments of interest and commission notes were paid by the plaintiffs through C. V. Wheat. There is nothing in the record to show that the mortgage companies authorized him to collect for them. The fact that the McNatt sisters chose to have him forward those payments for them would not constitute him the agent of the mortgagees to make the collection. In all the voluminous correspondence there is not a suggestion in any letter from W. E. Graves, Assistant Secretary of the Commerce Trust Company, who conducted all the correspondence, or in any letter from the McNatt sisters indicating that C. V. Wheat was authorized to collect the interest for the mortgagee. Nearly all the letters of Graves were addressed to one or all of the McNatt sisters, the three plaintiffs. There were a dozen and a half of those letters written by Graves, making demands for payment, threatening foreclosure, and they wrote several letters in relation to the matter. The loan was made by the Maxwell Investment Company; the Guaranty Trust Company was trustee. The mortgages were negotiated and the Commerce Trust Company as agent for the holders undertook the collection. Graves testified that he knew Mr. Wheat, that neither the Commerce Trust Company nor Maxwell Investment Company ever gave Wheat authority to collect the principal or interest on the mortgage notes. Graves testified further that he never knew anything at all about the $400 mortgage, or the $42 payment to Wheat. The several statements which were sent to the plaintiffs, showing the amounts due, was notice to them that the mortgagees had not received money which they paid to Wheat. There is nothing in the correspondence to indicate that the plaintiffs regarded Wheat as the agent of the mortgagees. On the evidence the court was fully justified in finding that Wheat was not the agent of any mortgagees. It is not alleged that they held him out as an agent and are thereby estopped to deny his agency. It is claimed that he was an agent in fact. The evidence justified a finding to the contrary. In that case defendants were not charged with the money he embezzled.

■ III. An insurmountable obstacle to plaintiffs' recovery is that they do not seek to do equity. They seek to set aside the trustee's sale. In all such cases the mortgagor must offer to redeem from the encum-

brance, or at least put the purchaser *in statu quo*. That is true even if there was fraud in procuring the sale of which there is no evidence here. [Lunsford v. Davis, 300 Mo. 508, l. c. 532-533, 254 S. W. 878; Hanson v. Neal, 215 Mo. 256, 114 S. W. 1073; Axman v. Smith, 156 Mo. l. c. 292, 57 S. W. 105; 41 C. J. 1029.; 10 R. C. L. 392-393.] One who seeks equity must do equity.

The plaintiffs knew there would be foreclosure as long in advance as February before it occurred April 6, 1929. They had more than a month's notice. Only $66 and a little interest was claimed to be due on the second mortgage. They took no steps whatever to make that small payment. While giving a chattel mortgage and a third mortgage, there was no direction of payment to take up those two commission notes. Manifestly they were concerned about protecting the property against the entire debt. The principal debt and two interest coupons were due on it at the same time. They knew that they had to protect the property against the first mortgage or a payment of the second mortgage would avail them nothing. That is probably why they neglected to make payments on those small notes or contrive a purchase at the sale. They suffered the property to be sold for the sum of $75. A prompt proceeding, if those notes had in fact been paid, would have caused that sale to be set aside. But they waited until the Maxwell Investment Company became the purchaser at the sale and two days later conveyed the property by special warranty deed to the President and Fellows of Middlebury College who held the first deed of trust. Almost a month later the Middlebury College conveyed the property to the defendant Mattie M. Williams. This suit was brought in November, 1930, a year and a half after Mrs. Williams purchased. She paid $4800 for the property. At the time the conveyance was made by the President and Fellows of Middlebury College she also acquired the first mortgage as a part of the purchase price, and she had that mortgage released. It is not even suggested anywhere that Mrs. Williams did not buy the land in good faith and pay off the first mortgage in good faith, believing that she had the title. The prayer for relief is as follows:

"Wherefore the plaintiffs pray the court for its order and decree canceling said deed of trust of record, satisfying the same, and that the deed now held by Mattie M. Williams and her husband, Frank Williams, be declared null and of no effect so far as vesting any title in them is concerned, and, that the cloud thereby created upon the title of these plaintiffs to the aforesaid real estate, be removed, and for naught held, and that these plaintiffs have all such other and further relief as to this court may seem meet and proper, with the costs hereof."

On the theory of plaintiffs stated in their brief the court should find that the two commission notes under which the property was

sold were paid at the time of the sale, the sale should be set aside and for naught held so that the plaintiffs would acquire the property free and clear of the first mortgage. There is no offer or suggestion that Mrs. Williams has any rights in the premises whatever.

The principal debt secured by the first mortgage and the commission note secured by the second mortgage were treated as a single debt. After the foreclosure under the second mortgage the property was conveyed to the holder of the first mortgage. If the plaintiffs had brought their suit against the President and Fellows of Middlebury College, the most they could have asserted on their own theory of the facts would have been to set aside the sale leaving the property subject to the first mortgage. Then they would have been in no better plight because the first mortgage and two interest coupons and a year's additional interest was due upon it. They would have been met by the necessity of satisfying the entire debt. In what particular is Mrs. Williams in a worse plight because she became possessed of the first mortgage, and had it released? To do equity the plaintiffs should offer to redeem by paying all that is due upon the first mortgage including principal and interest. They do not even offer to restore the first mortgage to its original validity and cancel the release so as to put Mrs. Williams in *statu quo* so far as that first mortgage is concerned. The respondent pleaded estoppel, and asserts that the facts indicated above, with other facts which the record shows estopped the plaintiffs from pursuing the remedy which they seek here.

Without going over the evidence in relation to that we hold that the plaintiffs cannot recover because they do not offer to do equity, but seek a remedy which is in violation of all equity.

The judgment is affirmed. All concur.