Velva K. KENNON and Thelma Kennon, Appellants,

v.

Bob CAMP, Bertha Camp and Home Insurance Company, Respondents.

No. 48819.

Supreme Court of Missouri,

Division No. 1.

Feb. 12, 1962.

Charles W. Medley, McClintock & Medley, Flat River, for appellants.

Robert A. McIlrath, Flat River, for respondent.

COIL, Commissioner.

Appellants, who were plaintiffs below, brought an action to set aside a trustee's deed and, in a second count, for damages against defendants-respondents for wrongful foreclosure. The trial court found and adjudged that the trustee's deed was valid and conveyed a good title to defendants, subject to a first deed of trust. Other portions of the trial court's judgment, by which certain funds in the registry of the court were ordered paid to the respective parties, will be hereinafter considered.

Prior to the foreclosure sale hereinafter described, plaintiffs Velva Kennon and his wife Thelma owned real estate (about 7½ acres) improved with a house and barn. There was evidence that the property was worth $10,000. A savings and loan association in Farmington held a first deed of trust executed by the Kennons in September 1953, securing an indebtedness of $5,500 which, at the time of the foreclosure, had been reduced to $2,737.73. On January 12, 1957, the Kennons executed their six per cent promissory note for $1,514 payable to Lacy Gower and Cecil Hulsey, d/b/a Gower Insurance Agency, due December 31, 1957, secured by a second deed of trust on the above-mentioned real estate. The deed provided that upon default in payment of the note the trustee named therein or, in the event of his refusal to act, the sheriff of St. Francois County might proceed to sell the property to the highest bidder, first giving 30-days' public notice of the time, terms, etc., by advertisement in some newspaper printed and published in St. Francois County. On September 21, 1960, for a consideration of $1,200, ownership of the note and the second deed of trust were transferred to defendant Bob Camp. After some negotiations with plaintiffs relating to a possible sale of their property to a third party, during which no agreement was reached, defendant (defendant or Camp will hereinafter refer to Bob Camp) said that he told plaintiffs something would have to be done toward the payment by them of the note secured by the second deed of trust which he told them he owned or he would have to foreclose the property. Plaintiffs testified that defendant did not at any time say that he intended to foreclose and never did demand payment of the note which had been allowed to continue as past due by the original payees. In the view we take, the conflict in the testimony in that respect is of no consequence.

On or just prior to October 6, 1960, defendant delivered to the St. Francois County

Sheriff's office the note, the second deed of trust, and a letter from the named trustee refusing to foreclose on the ground of a conflict of interest, and requested that the sheriff proceed. A deputy prepared a notice of the foreclosure sale and advertised it in a Farmington paper covering the period from October 6 to October 27, 1960, a total of twenty-two days, by four insertions on October 6, 13, 20, and 27, respectively. The sheriff sold the property on October 31, 1960, to defendant, the only bidder, for $4,700. Immediately following the sale, defendant paid the deputy sheriff $105 costs, purchased the first deed of trust for the $2,750.20 principal and interest then due, and received a sheriff's (trustee's) deed reciting that the title to the property was sold and conveyed to defendants for the sum of $4,700.

The evidence showed that plaintiffs had no knowledge of the foreclosure, either of the fact that the sale was held or that the property had been advertised for sale, until November 10, 1960, when a fire occurred in the property, destroying much of the interior of the house. Plaintiffs called the savings and loan association to report the fire and were informed of the foreclosure and were told that they would need to see Mr. Camp. The insurance was written by an insurance agency officing and connected with the association. Subsequent to the purchase of the first deed of trust by Camp, the insurance policy had been transferred or assigned to him without the knowledge of plaintiffs.

This action was filed December 1, 1960. Originally, one of the three counts sought a judgment against the insurance company for the amount of the fire damage. Prior to trial the company paid into court $6,759.59 and was discharged. No issue remains with respect to the company's liability.

Count 1 of plaintiffs' first amended petition alleged that the "trustee's deed was void, illegal and defective" for 11 stated reasons. All of those (save one to be hereinafter mentioned) charged irregularities in the performance of the foreclosure proceedings. In the view we take it will be necessary to notice only one irregularity. It is undisputed that the deed of trust under which the sheriff acted required 30-days' public notice of the terms and place, etc., and that, as shown by the sheriff's deed, the property was advertised for only 22 or, at the most, 26 days. Presumably, the notice in this case was purportedly given in accordance with the provisions of Sections 443.310 and 443.-320;[1] but, if so, without recognition of the provision in that section that it does not authorize the giving of a shorter notice than required by the pertinent deed of trust, or without taking into account the fact that, as noted, the deed of trust in this case provided that the property be advertised for thirty days.

■■■ The failure to advertise the sale for the prescribed period of thirty days was an irregularity in the execution of the foreclosure proceeding. A trustee's deed delivered pursuant to an improperly executed foreclosure sale conveys a valid title to the grantee until such deed is set aside, i. e., the deed is voidable. Roberts v. Murray, Mo., 232 S.W.2d 540, 546. An irregularity in the execution of a foreclosure sale must be substantial or result in a probable unfairness to suffice as a reason for setting aside a voidable trustee's deed. Powell v. Pinkley, Mo., 180 S.W.2d 745, 747 [1, 2]. Advertising the property for sale for a shorter period of time than provided in the deed of trust is a substantial irregularity which will support a mortgagor's action to redeem. Adams v. Carpenter, 187 Mo. 613, 86 S.W. 445, 451; Hoffman v. Bigham, 324 Mo. 516, 24 S.W.2d 125, 131 [9, 10]. Redemption may be accomplished either by proceeding as provided by statute, Section 443.410 (statutory redemption as of course), or by an action in equity to set aside the trustee's deed where redemption or otherwise putting the purchaser in status quo is the price put upon the court's decree. In Arnett v. Williams, 226 Mo. 109, 125 S.W. 1154, 1157, the court said

1. All section numbers refer to sections of RSMo 1959 and V.A.M.S.

those "statutes [redemption statutes] provide for redemption as of course. They are not intended to apply to equity cases to set aside trustees' sales and the deeds following as inoperative to pass title because of irregularities, and where redemption is the mere price put upon the decree in order to do equity." (Bracketed insert ours.) See also Fitzpatrick v. Federer, Mo., 315 S.W. 2d 826, 829 [4]; McNatt v. Maxwell Inv. Co., 330 Mo. 675, 50 S.W.2d 1040, 1044 [6–8]; Trotter v. Carter, 353 Mo. 708, 183 S. W.2d 898, 902, 903; Roberts v. Murray, supra.

■ While plaintiffs did not in their pleading formally offer to place the purchaser in status quo, they did aver that if plaintiffs had known of the foreclosure proceedings they would have paid the balance due on said deed of trust and they adduced evidence at the trial to the same effect. Under the circumstances plaintiffs should not be denied relief; but plaintiffs will be required to place the purchaser in status quo as a condition upon which relief will be granted. Cf. Fitzpatrick v. Federer, supra, 315 S.W.2d 829 [5].

One of the averments in plaintiffs' petition charged that defendants had no right to sell in that at the time of the notice of and sale defendant was not the owner and holder of the alleged note and deed of trust. If the evidence sustained that averment, the deed would be wholly void and defendants would have acquired no title under it. Peterson v. Kansas City Life Ins. Co., 339 Mo. 700, 98 S.W.2d 770, 775 [5–10], 108 A.L.R. 583. But inasmuch as this action in equity to set aside a void as well as a voidable deed is proper, and inasmuch as our direction on remand would be no different if the trustee's deed was held to have been void ab initio and in view of our next-succeeding holding herein, we need not rule the contention.

■ The second count of plaintiffs' petition sought $3,000 actual and $15,000 punitive damages for wrongful foreclosure in that allegedly defendants schemed and conspired with others to fraudulently deprive plaintiffs of their property. Inasmuch as plaintiffs sought at the trial and have continued to seek on this appeal to have the trustee's deed set aside, we construe their brief as seeking both the equitable relief of setting aside the deed and, in addition, damages at law for wrongful foreclosure. If plaintiffs wished to recover damages for wrongful foreclosure, they must not only have proved that the foreclosure sale was wrongful because no right to sell existed and thus that the sale was wholly void, but they must at the very least have indicated at the trial or unmistakably in their appellate brief that they chose in the first instance to permit the sale to stand, even if void, and to recover at law for damages. They may not have both the equitable relief of setting aside the trustee's deed and damages at law for wrongful foreclosure. As explained by the court in Peterson v. Kansas City Life Ins. Co., supra, 98 S.W.2d 775 [5–10]: "When the mortgagee has the right to foreclose, the foreclosure sale passes the legal title. An improper execution of the power of sale may be sufficient ground for a court of equity to set the sale aside. But, until it is set aside, it stands as a valid legal transfer of the title and the mortgagor ought to be barred from claiming damages at law because of the transaction as long as he permits it to stand as a legal conveyance of his title. For him to allow it to stand and bring an action at law, because of it, is in the nature of a collateral attack upon its validity. Such a sale may be voidable in equity but it is not void in law. If he desires to challenge its validity (when it is voidable but not void), he should attack it directly and he can only do that by a suit in equity. But, when the foreclosure itself is wrongful because no right to sell exists, then such a sale is wholly void and the mortgagee can acquire no title under it. The mortgagor has the right to go into equity and have it set aside. It would be a cloud on his title, and it would also be a means by which he might lose his title to an innocent purchaser, because he could be estopped by laches to assert his rights. In that situation, however, the mortgagor can let the sale stand, and sue at law for dam-

ages, because he has the right to collaterally attack it. By suing to obtain judgment at law to be paid its value, he does not admit its validity but he would thereafter be estopped to attack it in equity. Such a suit for damages at law is an especially appropriate remedy where an innocent purchaser buys at foreclosure, because it gives relief against the guilty rather than the innocent party."

The trial chancellor, in addition to adjudging the trustee's deed valid, found that there was $1,776.48 due on the second deed of trust at the time of the foreclosure, that Camp had paid $105 foreclosure costs, that there was a balance due on a judgment (unconnected with any matter here involved) in favor of defendants and against plaintiffs in the sum of $801.65, and concluded that plaintiffs were entitled to the difference between the total of those sums and the $4,700 bid by defendants at the foreclosure sale. The trial court therefore adjudged and ordered that of the $6,759.59 paid into the registry of the court by the insurance company, plaintiffs be paid the sum of $2,016.87 and that defendants be paid $4,783.13 less the costs of this suit. The transcript, as supplemented, discloses that on September 1, 1961, while this appeal was pending, the trial court ordered the clerk of that court to pay the defendants $4,783.13 from the money in the registry of the court. As a result there remains $1,976.46 of the money paid into court by the insurance company.

It follows from all the foregoing that our order herein should be and it is that the trial court's judgment is reversed and the case is remanded with directions to the trial court to enter a judgment setting aside and holding void and of no effect the sheriff's (trustee's) deed in question; ordering the $1,976.46 ($6,759.59 paid into court, less $4,783.13 paid to defendants)

remaining in the registry of the court paid to plaintiffs; awarding plaintiffs a money judgment against defendants in the amount of $151.45 and costs including the costs on this appeal; and adjudging that both notes have been paid and that both deeds of trust have been satisfied and ordering that the property in question be released of any lien or encumbrance by reason of said deeds of trust. (In explanation of the money judgment: There was $1,776.48 principal and interest due on the second and $2,750.20 due on the first deed of trust at the time of the foreclosure. Defendant or defendants had become the owner of those deeds of trust by purchase. Under the provisions of the first and under the provisions of the insurance policy, which named defendants' assignors the savings and loan association and Cecil Hulsey as insureds as their interests might appear under a standard mortgage clause, defendants were entitled to receive the amount of the mortgage indebtedness from the proceeds of the insurance. 45 C.J.S. Insurance § 919b. (2), p. 1025; 46 C.J.S. Insurance § 1147, p. 27; 59 C.J.S. Mortgages § 328d. (2), p. 452. As noted, defendant paid $105 costs of the sale. The total of the three stated items [$1,776.48, $2,750.20, $105] is $4,631.68, the total amount to which defendant or defendants were entitled from the proceeds of the insurance. That amount deducted from $6,759.59 leaves $2,127.91 to which plaintiffs are entitled. Deducting from that amount the $1,976.46 actually remaining in the registry of the court leaves $151.45 due plaintiffs.)

HOLMAN and HOUSER, CC., concur.

PER CURIAM

The foregoing opinion by COIL, C., is adopted as the opinion of the court.

All concur.