The MACON–ATLANTA STATE BANK, Plaintiff-Respondent,

v.

Raymond GALL and Jerry Gall, Defendants-Appellants,

and

Freddie D. Liebhart, Mary C. Liebhart, Zelta Gall, and James Gall, Defendants.

No. WD34645.

Missouri Court of Appeals, Western District.

Feb. 14, 1984.

Richard N. Brown, Brown & Casey, Brookfield, for defendants-appellants.

James P. Williams, Devoy & Williams, Brookfield, for defendants Freddie D. & Mary C. Liebhart.

Ellis & Meyer, Joseph M. Ellis, Macon, Oswald & Cottey, Louis F. Cottey, Kirksville, for plaintiff-respondent.

Before SHANGLER, P.J., and PRITCHARD and DIXON, JJ.

DIXON, Judge.

Defendants Raymond and Jerry Gall (father and son) appeal from a judgment in favor of the Macon-Atlanta State Bank declaring that a foreclosure sale, under which the Bank as mortgagee obtained title from the trustee, was proper and that good and marketable title was conveyed by the trustee.

Only one count of a six-count petition is involved in this appeal. The court tried separately the first count of the Bank's petition which sought declaratory relief that the foreclosure sale was valid and passed good title. After trial of that count, defendants Raymond and Jerry Gall filed an appeal. That appeal was dismissed for lack of a final judgment. *Macon-Atlanta State Bank v. Gall*, 647 S.W.2d 585 (Mo. App.1983). Upon remand, the trial court entered an order making the judgment final for the purposes of appeal, and this appeal ensued.

The present appeal presents issues concerning the validity of ordinary mail notice under Section 443.325(3), RSMo.1978, the propriety of a finding of laches and preclusion by estoppel from contesting the foreclosure sale, error in not finding the sale fraudulent, and the effect of the filing of a dissolution proceeding upon recorded deeds of trust executed before a dissolution occurs.

The factual background of the dispute is involved and convoluted.

On December 4, 1974, Zelta Gall and Raymond Gall filed a joint petition for dissolution of their marriage, together with a property settlement agreement. The agreement provided that Raymond would convey to Zelta his interest in approximately 668 acres of farm land the couple owned in Linn and Macon Counties, which includes the land involved in this case. In consideration for Raymond's interest in the property, Zelta agreed to pay Raymond $85,200.00 on or before February 1, 1975.

In late 1974, Zelta and her son James Gall applied to the Bank for a loan to pay off existing debts and to provide additional operating funds.

On January 31, 1975, while in the hospital, Raymond executed a one-year extension of payment of the amount due on the property settlement and a power of attorney to Zelta and James.

With assurances from Zelta and James that they had a power of attorney to act on Raymond's behalf, the Bank proceeded to process the loan. On May 5, 1975, Raymond, Zelta, and James Gall executed a negotiable promissory note payable to the Bank in the sum of $100,000, bearing annual interest at the rate of nine per cent. The note was secured by two deeds of trust conveying as security for payment of the note the Macon County and Linn County land here in dispute. At the time the Galls executed these documents, Raymond was

again a patient in the hospital. Prior to the transaction, the Bank obtained a notarized letter from Raymond's attending physician attesting to Raymond's competency.

The note was not paid in accordance with its tenor. In the fall of 1976, Bank representatives visited Zelta and James in person and informed them that if the note remained delinquent, the Bank would foreclose on the secured property.

During this time Raymond and Zelta were engaged in contesting their divorce action. In January 1977 Raymond filed an answer alleging that Zelta agreed that if he would co-sign the $100,000 note and deeds of trust on the property securing the note, she would pay him the $80,000 due him under the property settlement agreement and then secure his release from obligation on the Bank's note. The Bank was threatening foreclosure and notified the attorneys for Raymond and Zelta that foreclosure would ensue in April.

On April 22, 1977, the Circuit Court of Linn County entered an amended judgment dissolving the marriage of Zelta and Raymond Gall. The decree found the property settlement agreement to be unconscionable and void and ordered the Galls' real and personal marital property to be sold. The court directed the sheriff to first apply the sale proceeds, after paying the expenses incident to the sale, to the principal and interest due on the Bank's note.

The court-ordered sale was to be held on October 3, 1977. Midway through the sale, the proceedings were halted and the gathering told that an agreement had been reached and the Galls' real estate would not be sold. This resulted from an order postponing the sale until further order entered by the Circuit Judge, apparently at the request of Raymond and Zelta.

The day after the aborted sale, the Bank's attorney again wrote to the attorneys representing Zelta and Raymond. He informed them that unless their clients made payment on the note, the Bank would commence foreclosure proceedings on October 20, 1977.

When the Galls failed to make payment, the Bank initiated foreclosure proceedings. The Bank's attorney prepared the notices of the trustee's sale of the real estate in Macon and Linn Counties to be held on November 14, 1977. The Bank mailed the notices by regular mail to newspapers in Linn and Macon Counties, to Zelta, Raymond, and James Gall, and to their attorneys. Beginning on October 20, 1977, the notices appeared for four consecutive weeks in the Linn and Macon Counties' newspapers.

At trial, Zelta, Raymond, and James denied receiving written notice of the foreclosure sales. However, Zelta testified she understood that foreclosure was imminent if she did not pay the note. Zelta's attorney testified he communicated with Zelta about the foreclosures within a week after he received the notices. Zelta also acknowledged that approximately two weeks prior to the sales, her daughter informed her about the upcoming sales. Thereafter, Zelta notified James of the sales by telephone.

The evidence further revealed that prior to the sale, Raymond also had actual knowledge that his real estate would be sold. His employer, defendant Freddie Dean Liebhart, saw notice of the sale of the Macon County property the day it first appeared in the Macon newspaper. The next day, he discussed with Raymond the impending sale. He and Raymond discussed the sales of the Linn and Macon County lands prior to the date of publication. Liebhart also testified that he was present with Raymond on several occasions when Raymond's attorney discussed the foreclosure sales.

The trustee held the foreclosure sale on the Linn and Macon County lands on November 14, 1977. Freddie Liebhart, Raymond, Zelta, and her attorney were present at the Linn County proceedings. Freddie Liebhart started to bid against the Bank on

the Linn County property but stopped bidding at Zelta's request. She read to him a redemption notice and told Liebhart that if the Bank purchased the land, the Galls could redeem it. Raymond's attorney had prepared the notice of redemption, and Raymond, James, and Zelta Gall signed it on November 11, 1977. When Liebhart terminated his bidding, the Bank purchased the Linn County land for $123,000. Jerry Gall, Freddie Liebhart, Raymond, and Raymond's attorney attended the Macon County sale held later that day. Liebhart, the highest bidder, purchased the Macon County property for $51,000.

On December 28, 1977, the trustee executed and delivered the trustee's deeds to the Bank and to Freddie and Mary Liebhart upon receipt of their purchase prices. The Liebharts took possession of the Macon County property immediately thereafter and have remained in possession ever since.

The trustee cashed the checks received as payment for the properties purchased at the foreclosure sales and deposited them into an account from which the Bank made disbursement. The sales' proceeds were disbursed without objection from Zelta or her attorney and with Raymond's agreement given through his attorney.

The Bank first applied the proceeds to pay off its note and the expenses incident to the sales. Thereafter, it paid Raymond, through his attorney, the sum of $23,429.96. Raymond accepted the payment and never offered to return it to the bank. The Bank garnished Zelta's share of the proceeds in the amount of $23,429.96 for payment of a judgment rendered against Zelta on another note.

In April, 1978, Jerry and Raymond Gall and Freddie and Mary Liebhart contacted the Bank and informed it they wanted to purchase the Linn County land from the Bank. On April 18, 1978, these parties entered into a contract for sale of the Linn County real estate. The contract provided for a total purchase price of $145,000, with $29,000 payable in cash at the time of signing and the balance due upon delivery of the deed. The contract conferred upon the buyers the right to have the abstract of title certified to date and examined by an attorney of their choice. It further provided that defects noted by said examination would be corrected solely at the Buyer's expense, but that if a defect in title existed that could not be corrected, the contract would be null and void as to that part of the real estate. The agreement also provided that if the Bank performed its part of the contract or tendered performance, and the buyers failed to perform their part, the Bank would retain the $29,000 down payment as liquidated damages.

Jerry Gall retained an attorney to examine the abstract and to render an opinion thereon. The attorney questioned the marketability of the Bank's title obtained by virtue of the trustee's sale because the abstracting failed to show that the trustee complied with the requirements of Section 443.325, RSMo 1969, as amended, concerning the mailing of notice to Raymond and Zelta. He also questioned the effect of the pendency of the Galls' dissolution of marriage proceeding upon the validity of the foreclosure sale.

By letter dated July 14, 1978, the Bank notified the buyers and their counsel that it was tendering performance under the contract and stated its intent to declare forfeiture of the buyers' down payment if they failed to pay the balance due it on the purchase price by July 26, 1978.

The instant litigation followed.

After trial, the court entered judgment in the Bank's favor. The court specifically found that the original note and deeds of trust securing the subject properties were valid and binding and not the result of fraud; that the Galls' dissolution action and the proceedings incident thereto did not preclude the Bank's foreclosure action; that the trustee's failure to give the written notice mandated by Section 443.325, RSMo 1969, as amended, did not invalidate the foreclosure sale because of actual no-

tice, laches, and estoppel. It thus decreed title to the Linn County real estate to be in the Bank and title to the Macon County property to be in the Liebharts.

### The Notice Issue

The Galls contend that the admitted failure of the Bank to give the certified or registered mail notice required by Section 443.325(3), RSMo 1978, rendered the foreclosure sale void. The issue on the present appeal is the validity of the Bank's title upon the trial of that issue in the present declaratory judgment action. The issues arising from the real estate contract between Jerry Gall, Raymond Gall, and the Bank are not reached or decided. In the instant appeal, the only issue to be decided is the validity of the foreclosure as to Raymond Gall upon the record made on the trial of the declaratory judgment action. With respect to that action, Jerry Gall can raise no issues except those relating to the validity of Raymond Gall's title under the evidence presented.

Section 443.325(3) states in relevant part:

In the event of foreclosure under a power of sale, the foreclosing mortgagee or trustee shall, not less than twenty days prior to the scheduled date of the sale, cause to be deposited in the United States mail an envelope certified or registered, and with postage prepaid, enclosing a notice containing the information required in the published notice of sale referred to in section 443.320, addressed

. . . .

(3) To the mortgagor or grantor named in the deed of trust or mortgage at the foreclosing mortgagee's last known address for said mortgagor or grantor.

■ The personal notification requirements of Section 443.325(3) grew out of a concern for the constitutionality of state statutes that allowed foreclosure sales under a deed of trust with notice only by publication. Nelson, *Deed of Trust Foreclosure Under Powers of Sale,* 28 J.Mo.Bar 428 (1972) (hereinafter Nelson). This concern is traceable in part to the United States Supreme Court decision in *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), where the Court implied that notice by mail should be had when the names and addresses of interested parties are available. *See generally* G. Osborne, G. Nelson & D. Whitman, *Real Estate Finance Law,* Section 7.24 (1979). Personal notice serves to insure that the party having an interest in the sale has an opportunity to be present to assure himself or herself that the proceedings are carried out in a fair manner. Comment, *Nonjudicial Foreclosure Under A Deed of Trust: Some Problems of Notice,* 49 Texas L.Rev. 1085, 1087 (1971). The statute was proposed to meet due process challenges if "state action" was present. *Nelson, supra,* at 437. The proposed statute was adopted with only a minor addition in 1973. Laws of Mo.1973, p. 469. In *Federal National Mortgage Assoc. v. Howlett,* 521 S.W.2d 428 (Mo. banc), *appeal dismissed,* 423 U.S. 909, 96 S.Ct. 210, 46 L.Ed.2d 137 (1975), the Missouri Supreme Court held that no "state action" was present in a contractual power of sale. That holding precludes an attack on the notice given here on constitutional grounds.

The issue still to be decided is whether the admitted failure by the Bank to comply with the strict requirements of the above statute constitutes a ground for setting the sale aside. No previous decision in this state has addressed this particular question. Decisions from other states that permit deed of trust foreclosure differ as to the effect of not following the statutory notice requirements. For example, *compare Patton v. First Federal Savings & Loan Assoc.,* 118 Ariz. 473, 578 P.2d 152 (banc 1978) (sale is void), with *Crummer v. Whitehead,* 230 Cal.App.2d 264, 40 Cal. Rptr. 826 (1964) (sale valid if actual notice received); *Matter of Norton,* 41 N.C.App. 529, 255 S.E.2d 287 (1979) (notice waived if party is present and participates).

Missouri case law prior to the statute in question indicates that the insufficiency of notice required by the statutes does not render the foreclosure sale void but merely goes to the voidability of the sale. *Donovan v. Frick*, 458 S.W.2d 282 (Mo.1970). The general rules relating to defects in foreclosure proceedings under a power of sale similarly consider defects as creating issues as to voidability rather than voidness.

A mortgagor can invoke the aid of equity to set aside the sale only if fraud, unfair dealing or mistake was involved in the trustee's sale. *Drannek Realty Co. v. Nathan Frank, Inc.*, 346 Mo. 187, 139 S.W.2d 926 (1940). Furthermore, even if the mortgagee purchases the property at his own sale, a substantial irregularity or probable unfairness is still essential to have the sale set aside. *Powell v. Pinkley*, 180 S.W.2d 745 (Mo.1944). The rule was more recently stated as follows: "An irregularity in the execution of a foreclosure sale must be substantial or result in a probable unfairness to suffice as a reason for setting aside a voidable trustee's deed." *Kennon v. Camp*, 353 S.W.2d 693, 695 (Mo.1962), *citing Powell, supra.*

The evidence shows Raymond Gall had notice of the sale for more than the statutory twenty days before the sales occurred. He had discussed the sales with his attorney on several occasions prior to the day of the sales. There was no substantial evidence produced to show that Raymond was in any way prejudiced by the lack of written notice. As a general rule one having actual notice is not prejudiced by and may not complain of the failure to receive statutory notice. *First National Bank v. Oklahoma Savings & Loan Board*, 569 P.2d 993 (Okl.1977). Statutes that impose certain technical requirements for notice should not be strictly enforced where the party seeking enforcement had actual notice and cannot show prejudice as a result of the failure to follow the technical requirements. *Prairie Vista, Inc. v. Central Illinois Light Co.*, 37 Ill.App.3d 909, 346 N.E.2d 72 (1976). The Bank vice president testified that a notice was mailed to Raymond Gall by regular mail. A party entitled to personal written notice to a foreclosure hearing has been held to have waived that right by being present at the hearing and participating in it. *Matter of Norton, supra*, 255 S.E.2d at 289.

Because Raymond had actual notice for more than the statutory period, was present at the sales and yet did not object to the sales, and has failed to show any prejudice from the lack of receiving the written notice by registered mail required by Section 443.325(3), the Bank's failure to comply with the notice requirement was not a substantial irregularity requiring the sales be set aside.

### The Estoppel or Waiver Issue

The record contains sufficient competent evidence to support the action of the trial court on a ground of waiver or estoppel. Raymond Gall had more than three weeks actual notice of the sales and had discussed the sales with his attorney on several occasions prior to the sales. Both Raymond and his attorney knew of the Bank's failure to comply with Section 443.-325(3), yet took no action to stop the sales from proceeding. Moreover, Raymond accepted the surplus proceeds from the sales and never offered to return the proceeds to the Bank. The proceeds were disbursed with Raymond's agreement. Thus, the sales resulted in Raymond being released from his obligations on the note.

In *Grooms v. Mullett*, 133 Mo.App. 477, 113 S.W. 683 (1908), the guarantor of a note brought an action to determine his rights to monies held by as trustee under a deed of trust. The money had been produced by a foreclosure sale. The court held that where a guarantor is released from his obligation on a promissory note, and where he had full knowledge of the facts, the sale is approved by his actions.

The court stated that where a party receives a benefit, he cannot later repudiate the transaction. Having taken credit for a portion of the proceeds of a sale, a party cannot attack the validity of that sale. He is estopped from denying the validity of the foreclosure proceedings. *Grooms, supra,* 113 S.W. at 684.

In *Cobb v. Massey,* 160 S.W.2d 733 (Mo. 1942), a parcel of land was sold at a sheriff's sale. The court cited to familiar rule that "one who knowingly receives the purchase price of his own estate sold by one assuming to act under a valid power estops himself, in equity, from denying the power." *Cobb, supra,* 160 S.W.2d at 735, *quoting Boone v. Oetting,* 342 Mo. 269, 114 S.W.2d 981, 983 (1938). The court held that estoppel was established by the party's acts "in the nature of ratification of the sale that was made." *Cobb, supra,* 160 S.W.2d at 735. *Hector v. Mann,* 225 Mo. 228, 124 S.W. 1109 (banc 1910), applies the same rule to a partition sale.

The term estoppel has often been used to apply to situations actually involving ratification, affirmance, acquiescence and acceptance of benefits. *Hector, supra,* 124 S.W. at 1116. *Hector* has been recently cited as valid authority. *Lytle v. Page,* 591 S.W.2d 421, 425 (Mo.App.1979). Whatever "tag" should apply to the present situation, the facts justify denying to Raymond Gall the ability to contest the sale on the ground of irregularity.

Jerry Gall contends he cannot be estopped or held to have waived the requirements of notice. No authority is cited for the argument. The argument mistakes the posture of Jerry Gall as a defendant in the count that was actually tried. Jerry Gall was not a necessary party in the action for declaratory relief to determine the title to the Bank emanating from the foreclosure sale. As to the Bank's *title,* Jerry Gall has no interest in these proceedings. Jerry Gall's contractual claims with respect to the real estate contract between the Bank, Raymond and Jerry Gall, and the Liebharts are not reached or decided on this appeal.

## The Fraud Issue

Raymond and Jerry Gall next argue that the Bank's note and deed of trust were produced by the fraudulent actions of Zelta Gall, James Gall, and the Bank in obtaining the approval of Raymond Gall for the land transactions involved in this dispute.

The only authority offered under this point are references to the cases of *Mahler v. Tieman,* 550 S.W.2d 623 (Mo. App.1977), and *White v. Mulvania,* 575 S.W.2d 184 (Mo. banc 1978). Both cases involve the question of the imposition of a constructive trust upon property, or the sufficiency of pleadings involving the imposition of a constructive trust. The absence of authority supporting the proposition asserted normally indicates that there is no authority for that proposition. *Bishop v. Bishop,* 618 S.W.2d 261 (Mo.App.1981).

However, the court does not limit itself to the briefs filed by the parties but will search for authorities in order to reach a correct decision. *Willett v. Reorganized School District No. 2,* 602 S.W.2d 44 (Mo.App.1980). Generally a party fails to make out a case of fraud when the facts and circumstances presented are as consistent with honesty and good faith as they are with fraud. *Martin v. Brune,* 631 S.W.2d 77 (Mo.App.1982). Fraud is not presumed and its inference can be drawn only if the evidence rises above mere suspicion and points logically and convincingly to fraud. Such a finding must rest on more than suspicion, surmise and speculation. *Weaver v. Travers,* 631 S.W.2d 81 (Mo.App. 1982). The evidence does not meet this standard. The trial court's factual finding that no fraud occurred is supported by substantial competent evidence, and this court is not left with a firm belief that such a conclusion is wrong. *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976).

## Effect of Dissolution Proceedings

The Galls contend in their final point that the trustee could not sell the property pur-

suant to the deed of trust because the property was under the primary jurisdiction of the dissolution court, precluding Raymond and Zelta from entering into any agreements regarding the property absent authority from the dissolution court. The Galls' property settlement agreement, filed as part of their dissolution action in 1974, conveyed the property to Zelta in exchange for $85,200 to be paid to Raymond. On April 4, 1977, the trial court rejected the property settlement agreement as unconscionable and ordered the property sold. The proceeds from that sale were to be used to pay off the Galls' note owed to the bank and secured by a deed of trust on the property. The trial court postponed the sale "until further order" on October 3, 1977. The next day the bank notified the Galls of its intention to foreclose on the property and the property was sold the next month. Galls argue that the conscionability review required of the trial court by Section 452.325 RSMo 1978, prohibited Raymond and Zelta from "all actions affecting" the property without prior court review. Not surprisingly, no authority has been cited requiring such trial court supervision over the private property dealings of a husband and wife after a dissolution proceeding is filed. The case cited, *Block v. Block*, 593 S.W.2d 584 (Mo.App.1979), concerns the duty imposed upon the trial court before determining a property settlement agreement is conscionable.

The trustee's sale accomplished exactly what the trial court had previously ordered but later postponed. No claim has been made that the disposition of the proceeds was different than what would have occurred had the sheriff sold the land pursuant to court order.

There are sound policy reasons that militate against the adoption of the rule that the Galls espouse. First, such a rule would be contrary to fundamental concepts of the right of private property. The rule would also impinge upon the principle that land should be freely alienable. On practical grounds, such a rule would interfere with the capability of the parties to adjust their differences as to division of property by a disposition or mortgaging of their jointly-owned land. In many cases such a rule would require sale under court order when such a sale was neither necessary nor desirable. The Galls offer no sound reason for the adoption of such a rule, and the argument and its proposed rule is rejected upon policy grounds.

The judgment appealed from is affirmed.

All concur.