In re Kim Dwane KEITH, Martha Marie Keith, Debtors.

MERCANTILE BANK, Movant,

v.

Kim Dwane KEITH, Martha Marie Keith, Respondent.

Bankruptcy No. 96–43970.

United States Bankruptcy Court, W.D. Missouri.

June 25, 1997.

Scott R. Flucke, Overland Park, KS, for Movant.

Dennis G. Muller, Muller & Muller, Kansas City, MO, for Respondents.

## MEMORANDUM OPINION

ARTHUR B. FEDERMAN, Bankruptcy Judge.

This proceeding began as a Motion to Lift Automatic Stay filed by Mercantile Bank to allow it to pursue an Ejectment and Unlawful Detainer action against the debtors Kim and Martha Keith in the Associate circuit Court of Jackson County, Missouri. This is a core proceeding under 28 U.S.C. § 157(b)(2)(G) over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 157(a), and 157(b)(1). For the reasons set forth below, Mercantile's motion will be DENIED. Additionally, the foreclosure sale will be set aside, and the Deed of Trust will be reinstated.

## FACTUAL BACKGROUND

The procedural posture of this case is complicated. The motion to lift the automatic stay, filed by Mercantile on May 27, 1997, was granted on June 12, 1997. However, it appears that a timely response to the motion was received by the Court on June 11, 1997. This mistake was brought to the Court's attention by counsel for Mr. and Ms. Keith at a hearing held on June 17, 1997. At that hearing I granted debtors' Motion to Reconsider my Order of June 12, 1997, and that Order is now VACATED. The Court then proceeded to take up the Motion to Lift the Automatic Stay and debtors' Motion to Reconsider Order Denying Motion to Set Aside Order of Dismissal of Adversary Proceeding on their merits.

Mr. and Ms. Keith own a home on which Mercantile Bank held a First Deed of Trust to secure an obligation in the original amount of $72,000.00. After debtors fell into default, Mercantile notified them, by letter received September 24, 1996, that a foreclosure sale would be conducted on October 24, 1996. The foreclosure proceedings were initiated by an attorney retained by the Kansas City office of Mercantile Bank. During this period of time, the loan was being shuffled back and forth between different branches of Mercantile Bank responsible for servicing home mortgage loans. Apparently unbeknownst to the bank representatives in Kansas City, the St. Louis office generated a Default Notice dated October 1, 1996, which was mailed to the debtors. The Default Notice informed Mr. and Ms. Keith that they could cure the default by paying the October payment and by paying a total of $2,267.12 to Mercantile

Bank no later than November 5, 1996. In reliance on the October 1, 1996, notice, debtors made the October payment in October of 1996. Martha Keith testified at the hearing that she was prepared to bring all payments current by November 5, 1996. Prior to that happening, of course, the attorney retained by the Kansas City branch proceeded with the foreclosure sale on October 24, 1996, and the property was purchased by Mercantile Bank for $72,000. Ms. Keith also testified that she was unaware at the time that the foreclosure sale had taken place, and it is undisputed that she did not attend the sale. On November 5, 1996, Mercantile Bank filed an Ejectment and Unlawful Detainer action against Mr. and Ms. Keith in the Associate Circuit Court of Jackson County, Missouri. That lawsuit apparently precipitated this Chapter 13 bankruptcy proceeding, which was filed on November 27, 1996.

After debtors filed their bankruptcy case, they also filed an adversary proceeding on December 30, 1996, seeking to avoid the transfer of the home to Mercantile Bank. That adversary proceeding was dismissed without prejudice on May 20, 1997, when debtors failed to provide proof of insurance by a date certain as Ordered by this Court.

At the hearing on the Motion to Lift Automatic Stay, Ms. Keith informed the Court of the two separate communications from Mercantile Bank, and of her confusion surrounding the foreclosure sale. Her attorney could not locate a copy of the second letter from the St. Louis branch of Mercantile Bank, however, this Court gave him latitude to submit the letter to the Court after the hearing, which he did. Counsel for Mercantile Bank also provided the Court with a copy of the second communication after the hearing. Having considered the testimony of the parties, I will consider debtors' Motion to Reconsider Order Denying the Motion to Set Aside Order of Dismissal of Adversary Proceeding as a Motion to Set Aside the Foreclosure Sale. The issue, thus, is whether the foreclosure sale should be set aside for fraud, unfair dealing, or mistake. After deciding that mo-

tion, I will decide the motion regarding the automatic stay.

## DISCUSSION

■ In Missouri, if fraud, unfair dealing, or mistake surrounds a foreclosure sale, the remedy is to set aside the sale.[1] No one claims that Mercantile committed fraud surrounding the sale. In fact, absent the second letter dated October 1, 1996, there appears no question that Mercantile sent all the proper notices, and that the October 24, 1996, sale was consistent with Missouri law. However, the letter of October 1, 1996, was at best a mistake, and may represent unfair dealing. After first giving Notice of Default, and listing the amount past due, the letter informed Mr. and Ms. Keith of the steps necessary to cure the default:

> *Curing the Default:* To cure such default it will be necessary for you to remit 3 monthly payments to us totalling $2,267.12 (which includes late charges) no later than November 5, 1996, together with $711.00 for your monthly payment due for October 28, 1996. Your remittance must be in good funds, preferably by cashier's check or money order.

> *If Default Continue:* In the event the default described herein is not cured by the deadline specified above, we may be forced to accelerate your Mortgage Loan and declare the entire balance on your Note to be immediately due and payable. In such event, we may commence proceedings to foreclose on the Deed of Trust/Mortgage which secures your Mortgage Loan and/or exercise any other rights and remedies available to us to collect said Mortgage Loan.

> If we are forced to pursue our remedies on the Note and/or the Deed of Trust/Mortgage, we will be entitled to recover not only the principal and interest due on said note, but all of our reasonable cost and expenses, including attorney's fees.[2]

---

1. *See Boatmen's Bank of Jefferson County v. Community Interiors, Inc.,* 721 S.W.2d 72, 76 (Mo.Ct. App.1986); *Macon–Atlanta State Bank v. Gall,* 666 S.W.2d 934, 940 (Mo.Ct.App.1984).

2. Court's Ex. A, MERC MORTGAGE TRAM 32–5.

It is clear that the second letter offered the Keiths an opportunity to cure the default by the payment of the arrears. It is also clear that the information in the second letter did not correspond with the information given to debtors by Mercantile when it noticed the foreclosure sale. Perhaps debtors were naive to just accept an apparent change of heart on the part of Mercantile to delay the previously scheduled foreclosure sale. But Mr. and Ms. Keith are not sophisticated business people. He is a truck driver and she is unemployed. They likely are unaware that Mercantile has several different branches in different cities. Nor are they likely to understand that one office may communicate with borrowers unbeknownst to another office. At any rate, according to Ms. Keith's testimony, she believed if she made her October payment by October 28, 1996, and made all the past due payments by November 5, 1996, she would have cured the default. She made her October payment by October 28. In response, Mercantile filed an Ejectment and Unlawful Detainer action against debtors on November 5, 1996, the very date set out in the second communication as the date to cure the default.

■■■ The foreclosure sale was conducted as scheduled on October 24, 1996. Neither debtor attended. In Missouri, a foreclosing mortgagee must give notice by certified or registered mail not less than twenty days prior to the sale to the owner of the property.[3] This statutory notice insures that a party having an interest in the sale has an opportunity to be present and assure the proceedings are conducted in a fair manner.[4] A failure to give the required notice is a substantial irregularity sufficient to cause the sale to be set aside.[5] Moreover, the foreclosure sale was conducted without a court order. Foreclosure sales conducted under a power of sale and without a court order are scrutinized very closely for any irregularities.[6] The second letter was interpreted by the debtors as another opportunity to cure the default. At a minimum that communication created an irregularity in the notice previously sent to debtors. Moreover, if a "mortgagee lulls the owner of the equity of redemption into a sense of security and then forecloses, without giving actual notice to the owner, courts of equity have uniformly set aside the foreclosure sale."[7] A letter informing debtors they had additional time to cure a default, mailed after notice of a foreclosure sale, could well have lulled Mr. and Ms. Keith into a sense of security, and it could have made them believe the foreclosure sale had been postponed. It most certainly prevented them from attending the foreclosure sale, as was their right. Lastly, when property is purchased by the mortgagee or the trustee at a foreclosure sale held without a court order, the court will "jealously scrutinize the transaction."[8] No one contends that this was anything more than a mistake on the part of Mercantile Bank. However, it was Mr. and Mrs. Keith that lost their home. Under the circumstances, I find that the notice of the foreclosure sale scheduled for October 24, 1996, became faulty when a second communication from Mercantile extended the time to cure the default to November 5, 1996. As such, the foreclosure sale will be set aside as void, title to the property will be restored to the name of the debtors Kim Dwane Keith and Martha Marie Keith, and the Deed of Trust and the note executed by debtors in favor of Mercantile Bank will be reinstated. My holding in this matter obviates the need to lift the automatic stay to allow Mercantile Bank to proceed with the Ejectment and Unlawful Detainer action in state court, as that action is now moot.

■■■ Debtors must still make their insurance premium payment by July 5, 1997, and they must confirm a plan and make all plan payments pursuant to their plan. They must

3. Mo. St. Ann. § 443.325(3) (1986).

4. *Macon–Atlanta State Bank v. Gall,* 666 S.W.2d 934, 939 (Mo.Ct.App.1984).

5. *See Kennon v. Camp,* 353 S.W.2d 693, 695 (Mo.1962).

6. *See Farris v. Hendrichs,* 413 S.W.2d 185, 189 (Mo.1967).

7. *Donovan v. Frick,* 458 S.W.2d 282, 286 (Mo. 1970).

8. *See Smith v. Haley,* 314 S.W.2d 909, 914 (Mo. 1958).

also remain current in their monthly payments to Mercantile Bank. The mere setting aside of a foreclosure sale does not relieve the mortgagors of their obligation to perform under the promissory note and Deed of Trust. The party asking to have the foreclosure set aside must return the purchaser at the foreclosure sale to the status quo.[9] In this case Mercantile Bank will be returned to its status quo if debtors remain current on their monthly plan payments, they maintain insurance on the residence, and they cure all arrearage over the life of the plan.

An Order in accordance with this Memorandum Opinion will be entered this date.

---

9. *See Kennon v. Camp,* 353 S.W.2d 693, 696    (Mo.1962).