In re Michael D. ADAMS, Debtor.

Bankruptcy No. 97–42552.
United States Bankruptcy Court,
W.D. Missouri.

Aug. 27, 1997.

Robert D. Lantz, Martin, Leigh & Laws, Kansas City, MO, for Movant.

Steven L. Crouch, Crouch & Robinson, Kansas City, MO, for Debtor.

## MEMORANDUM OPINION

ARTHUR B. FEDERMAN, Bankruptcy Judge.

Creditor Charles F. Curry Company (Curry) moves this Court to annul the automatic stay and objects to confirmation of debtor Michael Adams' Chapter 13 plan. This is a core proceeding under 28 U.S.C. § 157(b)(2)(G) and (L) over which the Court has jurisdiction pursuant to 28 U.S.C. § 1334(b), 157(a), and 157(b)(1). For the reasons set forth below, I find that the foreclosure sale is void, the motion to lift stay is, therefore, denied, and the plan must be modified to reflect the proper amount of the arrearage owed to Curry, as well as the correct monthly payments to be made on the mortgage.

Mr. Adams and his estranged wife executed an FHA Multi–State Note on April 7, 1993, in the amount of $41,457 to purchase real estate legally described as:

LOT 60, COLONY PARK, A SUBDIVISION IN KANSAS CITY, JACKSON COUNTY, MISSOURI, which has the address of 10412 TULLIS, KANSAS CITY, MISSOURI 64113.[1]

1. Cr. Ex. A and B.

2. Cr. Ex. B.

3. 11 U.S.C. § 362(a)(3).

4. *In re Tanksley*, 70 B.R. 429, 430 (Bankr. E.D.Mo.1987).

5. *Id.; Bain v. Bain (In re Bain)*, 143 B.R. 715, 716 (Bankr.W.D.Mo.1992).

The Note was secured by a Deed of Trust dated and recorded that same date.[2] The Note and Deed of Trust were ultimately assigned to Government National Mortgage Association. Curry is the servicer for Government National Mortgage Association. Debtor defaulted under the Note and Deed of Trust, and, after proper notice and publication, a foreclosure sale was scheduled for July 10, 1997.

Mr. Adams then filed his Chapter 13 bankruptcy petition on July 9, 1997, but he failed to notify Curry of the filing. On July 10, 1997, the foreclosure sale was conducted and Curry purchased the real estate at the sale.

Curry, upon notification of the bankruptcy filing, filed a Motion to Terminate, Annul, or Modify the Automatic Stay on July 28, 1997. Further, Curry objects to the confirmation of Mr. Adams Chapter 13 plan arguing that the plan is not feasible and that a material default is inevitable.

Mr. Adams argues that a post-petition foreclosure sale is void. At a hearing conducted August 18, 1997, Mr. Adams asked this Court to deny the motion to lift the automatic stay arguing that he has equity in the real estate, and that the real estate is necessary to an effective reorganization.

## DISCUSSION

■ The filing of a Chapter 13 petition operates as a stay of any act on the part of a creditor to obtain possession of property of the estate.[3] A foreclosure sale, therefore, conducted post-petition is a violation of the automatic stay.[4] As a general rule, "acts taken in violation of the automatic stay are . . . deemed void and without effect."[5]

■ Mr. Adams contends that, because relief from the stay was not sought by Curry prior to the foreclosure sale, the sale is null and void.[6] But, even if actions in violation of

6. *See In re Rose*, 113 B.R. 534, 537 (W.D.Mo. 1990) *citing* 3 Collier on Bankruptcy ¶¶ 362.11[1] at 362–111 (Lawrence P. King et al. eds., 15th ed. revised 1997); *see also In re Smith*, 876 F.2d 524, 526(6th Cir.1989). *But see Picco v. Global Marine Drilling Co.*, 900 F.2d 846, 850 (5th Cir. 1990) (actions taken in violation of the stay are merely voidable because the bankruptcy court has the power to annul the stay pursuant to section 362(d)).

the stay are void, there are equitable exceptions to this rule.[7] Section 362(d) allows the Court to "annul" the effects of the automatic stay, as well as terminate or modify the stay.[8] In order to annul the effect of the automatic stay, the Court, in essence, grants retroactive relief from the stay.[9] Courts have found cause to grant retroactive relief from the stay under the following conditions: (1) if the creditor violated the stay without actual or constructive knowledge of the stay; (2) if there was no equity in the property of the estate; (3) if the property was not necessary for an effective reorganization; (4) if grounds for relief from stay existed and the motion would have been granted if filed; and (5) if failure to grant retroactive relief would cause unnecessary expense to the creditor.[10]

▮ In this case the equitable considerations weigh in favor of not granting retroactive relief. It is not disputed that Mr. Adams' attorney failed to notify Curry of the bankruptcy filing, therefore, Curry had neither constructive or actual knowledge of the Chapter 13 filing. However, it appears that Mr. Adams may have equity in the real estate. Mr. Adams estimated the value of the home to be $64,000 on his bankruptcy schedules. Curry purchased the property at the foreclosure sale for $48,657.67.[11] The foreclosure sale was conducted without a court order. Foreclosure sales conducted under a power of sale and without a court order are scrutinized very closely for any irregularities.[12] Moreover, there was no third party involved in this transaction. When property is purchased by the mortgag-

ee or the trustee at a foreclosure sale held without a court order, the court will "jealously scrutinize the transaction." [13] I find that, under these circumstances, the price Curry bid for the property at the foreclosure sale does not necessarily reflect the value of the property. Thus, there may be equity in the property notwithstanding the fact that Mr. Adams' schedules indicate there are two other creditors holding second and third deeds of trust on the property.[14] Mr. Adams filed this Chapter 13 bankruptcy case because the residence is necessary to an effective reorganization. He is the custodial parent providing a home for his two children aged eight and eleven. *In re Tanksley*, cited by Curry at the hearing, was a Chapter 7 case.[15]

I also find that this Court would not have granted Curry relief from the automatic stay had it appealed to it prior to the foreclosure sale. Mr. Adams' petition was accompanied by completed schedules and a Plan and Plan Summary.[16] I would have denied relief at least until I was assured the plan could not be confirmed.

Curry argues that the plan, as proposed is not feasible and cannot be confirmed, therefore, if I find the foreclosure sale is void, it will incur needless expense in rescheduling another one. I disagree. At the hearing, Mr. Adams did not dispute the amount of the debt or the arrearage.[17] Curry claims the total arrearage is $9,132.98. It also claims the monthly payments are now $507.62. Mr. Adams' plan commits $275.00 a week from future earnings to satisfy the plan payments over a period of 55 weeks.[18] He is, thus,

---

7. 3 Collier on Bankruptcy ¶¶ 362.11[1] at 362-111-112 (Lawrence P. King et al. eds., 15th ed. revised 1997). *In re Tant*, 156 B.R. 1018, 1022-23 (Bankr.W.D.Mo.1993).

8. 11 U.S.C. § 362(d).

9. *In re Tanksley*, 70 B.R. at 430.

10. *Id.* at 431.

11. Cr. Ex. D.

12. *See Farris v. Hendrichs*, 413 S.W.2d 185, 189 (Mo.1967).

13. *See Mercantile Bank v. Keith (In re Keith)*, 211 B.R. 355 (Bankr.W.D.Mo.1997); *Smith v. Haley*, 314 S.W.2d 909, 914 (Mo.1958).

14. Debtor's bankruptcy schedules indicate Curry holds the first Deed of Trust securing a claim for $37,000 and American General Finance holds a second Deed of Trust securing a claim for $8,720. Sch. D. Norwest Financial is listed as an unsecured creditor holding "a third mortgage on residence" in the amount of $6,000. Sch. F.

15. 70 B.R. 429 (Bankr.E.D.Mo.1987).

16. Doc. # # 1 and 2.

17. *See* Cr. Ex. E.

18. Doc. # 2.

committing $15,125 over the course of the plan to satisfy the claims of creditors. Given the fact that the monthly mortgage payments and the arrearage claimed at the hearing differ from the payments proposed in the proposed plan, the Plan and Plan summary, must be amended to accurately reflect the total arrearage, the accurate monthly payment to Curry, and the appropriate percentage to be paid to the unsecured creditors in order to satisfy the "best interest of creditors' test" pursuant to 11 U.S.C. § 1325(a)(4). Mr. Adams has ten days from the date of this Memorandum Opinion to amend his plan. Since I am not prepared to find at this time that the plan is not feasible, I cannot find that Curry will incur needless expense in conducting another foreclosure sale. If Mr. Adams successfully completes his Chapter 13 plan, another foreclosure sale will not be necessary.

An Order in accordance with this Memorandum Opinion will be entered this date.