# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

_____

No. 09-6053

_____

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| Lawrence C. Potts, Jr.; | * | |
| Opal M. Potts, | * | |
| | * | |
| Debtors. | * | |
| | * | |
| | * | |
| Bank Northwest, | * | |
| | * | Appeal from the United States |
| Creditor - Appellant, | * | Bankruptcy Court for the |
| | * | Western District of Missouri |
| v. | * | |
| | * | |
| Lawrence C. Potts, Jr.; | * | |
| Opal M. Potts, | * | |
| | * | |
| Debtors - Appellees. | * | |
| | * | |

_____

Submitted: December 18, 2009
Filed: January 12, 2010

_____

Before KRESSEL, Chief Judge, MAHONEY and SALADINO, Bankruptcy
Judges.

_____

SALADINO, Bankruptcy Judge.

Bank Northwest appeals from an order of the United States Bankruptcy Court for the Western District of Missouri[1] dated August 19, 2009, overruling Bank Northwest's objections and confirming debtors' Chapter 13 plan. For the reasons stated below, we affirm.

## FACTS AND PROCEDURAL HISTORY

On March 14, 2007, Lawrence C. Potts, Jr. and Opal M. Potts, husband and wife, together with their son, Steven C. Potts, executed a promissory note payable to Bank Northwest in the original principal amount of $341,479.03. The note is secured by two deeds of trust, each encumbering three tracts of real estate: tract 1 is a 109-acre parcel upon which Debtors live; and tracts 2 and 3 collectively make up a 210-acre parcel which is grazing and cropland. The note calls for annual payments, with the first payment being due on March 14, 2008, with an additional annual payment on March 14, 2009, and a third and final lump sum payment due on March 14, 2010, for the remaining balance due under the note. Together with interest and fees, the balance due under the note is in excess of $480,000.00. The 210-acre parcel was recently appraised at a value of $420,000.00. The 109-acre parcel was last appraised in 2006 at a value of $165,000.00.

Debtors defaulted on making the payments due to Bank Northwest, and on March 31, 2008, the note balance was accelerated. On February 4, 2009, Debtors filed this proceeding under Chapter 12 of the United States Bankruptcy Code. On March 3, 2009, the bankruptcy court granted Debtors' motion to convert their case from Chapter 12 to Chapter 13. Debtors have two primary creditors. BTC Bank is secured by a perfected security interest in cattle and has apparently consented to its plan treatment. The other is appellant Bank Northwest, which is secured by real estate. On

---

[1]The Honorable Jerry W. Venters, United States Bankruptcy Judge for the Western District of Missouri.

2

March 13, 2009, Debtors filed their Chapter 13 plan which proposed to pay all unsecured claims in full by paying to the trustee the sum of $500.00 per month and to directly pay the indebtedness to Bank Northwest in annual payments with a balloon payment due in 2015.

On May 5, 2009, Bank Northwest filed a motion for relief from the automatic stay and an objection to confirmation of Debtors' Chapter 13 plan. BTC also objected to confirmation but its objection was later resolved. On July 2, 2009, an evidentiary hearing was held on Bank Northwest's objection and its motion for relief. The matters were continued for further hearing, and an amended plan was filed on July 22, 2009. The amended plan provided for payment of Bank Northwest's claim together with interest at 6% per annum with annual payments amortized over 20 years commencing no later than December 31, 2009, and a balloon payment at the end of five years.

Bank Northwest continued to object to feasibility, and, after hearing further testimony and receiving further evidence on August 13, 2009, the court overruled the bank's objections to confirmation and thereafter confirmed Debtors' Chapter 13 plan. The bankruptcy court also entered a Conditional Denial of the bank's motion for relief from stay, the condition being that if Debtors defaulted in making any of the Chapter 13 plan payments owed to Bank Northwest, the bank would be entitled to relief from the automatic stay. That same relief language appears in the amended plan.

On appeal, Bank Northwest asserts: (1) that the plan does not meet the feasibility requirement of 11 U.S.C. § 1326(a)(6); (2) that confirmation of the plan was in error because the plan impedes the creditors' remedies subsequent to default; and (3) that confirmation was in error because it provides for bifurcation of a secured claim.

3

## STANDARD OF REVIEW

The bankruptcy court's findings of fact shall not be set aside "unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Fed. R. Bankr. P. 8013. The bankruptcy court's findings of fact are reviewed for clear error and its conclusions of law are reviewed *de novo*. *First Nat'l Bank of Olathe v. Pontow (In re Pontow)*, 111 F.3d 604, 609 (8th Cir. 1997). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S. Ct. 525, 542, 92 L. Ed. 746 (1948). The feasibility of a plan is a finding of fact. *Gen. Motors Acceptance Corp. v. Gardner (In re Gardner)*, 25 B.R. 297, 299 (D. Ark. 1982).

## DISCUSSION

Bank Northwest's first assignment of error is that the plan should not have been confirmed because it is not feasible. The confirmation hearing occurred over the course of two days, July 2, 2009, and August 13, 2009. Bank Northwest is owed about $480,000.00 and admits that it is substantially over-secured. At the August hearing, Debtors introduced into evidence a revised budget which showed income adequate to pay expenses and to make plan payments. Debtors' income comes from Mrs. Potts' off-farm income, both Debtors' Social Security income, cash rent and cattle sales. It is clear from the transcript that the court made inquiry into Debtors' income sources and expense amounts. While admitting it was a close call, the bankruptcy court found that Debtors had the ability to perform the plan.

Bank Northwest argues that the projected income from cattle sales was speculative considering the condition of the cattle herd. However, the bankruptcy court recognized that there was some room in the budget even if the herd did not

4

generate the full amount of the projected sale income and that the Debtors might have to engage in some further belt-tightening. The bottom line is that Bank Northwest simply does not agree with Debtors' projections. Simple disagreement is not sufficient to establish clear error by the court. *Anderson v. City of Bessemer City, N.C.,* 470 U.S. 564, 574, 106 S. Ct. 1504, 1511, 84 L. Ed. 2d 518 (1985) (stating that the clear error standard of review "plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently."). Bank Northwest is unable to identify any objective fact which clearly establishes that the bankruptcy court erred in determining that the plan was feasible based on the projections of Debtors.

Bank Northwest further argues that the bankruptcy court erred in confirming the plan because it impedes the bank's remedies subsequent to Debtors' default. Specifically, the plan provides that Bank Northwest is entitled to relief from the automatic stay to take possession of and dispose of its collateral if payments are not timely made. However, the lifting of the automatic stay "shall be conditioned upon the sale of the 210-acre tract first and, after that sale has been closed and the remaining balance determined, Debtors shall have ten days to file an amended plan proposing payment of any balance due." This provision was apparently included in the plan in the hope that a foreclosure of the 210-acre parcel would produce a sale price sufficient to pay off most of what is owed to Bank Northwest. That would leave Debtors with a more manageable, smaller debt secured by the 109-acre homestead parcel.

Bank Northwest's objection seems to be based on the belief that the plan cannot modify the default remedies of the creditor. Bank Northwest is incorrect. 11 U.S.C. § 1322(b)(2) specifically provides that a Chapter 13 plan may "modify the rights of holders of secured claims . . ." Bank Northwest has been unable to identify any provision of the Bankruptcy Code which would prohibit the modification of a secured creditor's default remedies, primarily because no such prohibition exists. Since there is no such prohibition, and since the Bankruptcy Code expressly authorizes

modification of the rights of the holders of secured claims, the bankruptcy court did not err.

Finally, Bank Northwest argues that the Chapter 13 plan provides for a bifurcation of its secured claim after it has already been allowed as fully secured. However, contrary to the bank's assertions, the claim is not bifurcated at all. The claim is allowed as a fully secured claim and under the plan it remains secured by the same collateral as existed at the time the loan was made. The plan does not "bifurcate" the claim into secured and unsecured portions. Bank Northwest is simply incorrect in asserting that this plan bifurcates its claim.

## CONCLUSION

For the foregoing reasons, the decision of the United States Bankruptcy Court for the Western District of Missouri is affirmed.

_____