# United States Bankruptcy Appellate Panel
## For the Eighth Circuit

_____

No. 20-6016

_____

In re: Vanessa Courtney

*Debtor*

------------------------------

Vanessa Courtney

*Plaintiff - Appellant*

v.

KeyBank  N.A.; Ditech Financial  LLC,

formerly known  as Green Tree Servicing, LLC

*Defendants - Appellees*

_____

Appeal from United States Bankruptcy Court
for the Eastern District of Missouri - St. Louis

_____

Submitted:  November 16, 2020
Filed:  January 14, 2021

_____

Before SHODEEN, DOW and SANBERG, Bankruptcy Judges.

_____

DOW, Bankruptcy Judge.

The subject of this case is a foreclosure sale by KeyBank National Association (the "Bank") of real property (the "Property") owned by Vanessa Courtney (the "Debtor). After the Debtor filed for bankruptcy, she filed a complaint against the Bank to set aside the foreclosure in equity (the "Complaint"). The Bankruptcy Court rendered judgment in favor of the Bank on all counts, and the Debtor appealed. For the reasons that follow, we affirm.

## STANDARD OF REVIEW

A bankruptcy court's legal conclusions are subject to *de novo* review. *Fisette v. Keller (In re Fisette)*, 455 B.R. 177, 180 (8th Cir. BAP 2011). Here we review *de novo* whether the Bankruptcy Court's conclusions interpreting the relevant statutes and cases and applying them to the undisputed facts are correct.

We review a bankruptcy court's findings of fact for clear error. *In re Potts*, 421 B.R. 518, 521 (8th Cir. BAP 2010). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364, 395 (1948).

## FACTUAL BACKGROUND

The parties have stipulated to the following facts. The Debtor jointly owned the Property located in St. Louis, Missouri. The first note and deed of trust was dated March 31, 2006, and held by ABN Amro Mortgage Group (the "First Mortgage"), predecessor to Ditech Financial LLC fka Green Tree Servicing LLC ("Ditech"). The principal amount of the First Mortgage was $68,750. The Bank originated a second mortgage secured by the Property on September 20, 2007, in the principal amount of $21,871.50 (the "Second Mortgage").

The Debtor became delinquent on the Second Mortgage in October, 2016. On July 3, 2017, the Bank mailed the Debtor her usual and customary monthly statement notifying her that the amount necessary to cure the default was $2,145.28 which was due by July 26, 2017 (the "July 3 Statement"). On July 7, 2017, the Debtor initiated a phone call to the Bank to discuss reinstating her loan. The Bank advised the Debtor to contact the Bank's foreclosure counsel to obtain a complete and correct written payoff statement that included legal fees and costs.

On July 11, 2017, after Debtor's telephone request, the Bank's foreclosure counsel mailed Debtor a letter with the reinstatement amount of $6,179.86, broken down into payments, late charges and foreclosure fees (the "Reinstatement Notice"). On July 13, 2017, the Debtor tendered the amount of $2,145.28 to the Bank via USPS Priority Mail. The Bank rejected that sum as insufficient to reinstate the Second Mortgage, and returned it to the Debtor. At no time did the Debtor remit the full amount in arrears.

On July 18, 2017, the Bank foreclosed on the Property (the "Foreclosure Sale"). The Debtor filed her Chapter 7 petition on September 25, 2017. The Bank subsequently paid off the First Mortgage in the amount of $56,227.25, and Ditech released its lien. The Debtor received a discharge in January of 2018, and soon thereafter, the case was closed. Two months later, the Debtor filed a motion to impose the automatic stay to stop the Bank from instituting eviction proceedings against her. The case was reopened, and the Bankruptcy Court ordered the Bank to abstain from removing the Debtor from the Property until the matter was resolved by declaratory judgment. This adversary proceeding ensued.[1]

---

[1] Ditech is a co-defendant in this adversary proceeding, but subsequently filed bankruptcy. No relief from the automatic stay was granted in that case to allow the Debtor to pursue relief against Ditech. The Debtor and the Bank conceded that dismissing Ditech as a party was the most appropriate course of action, so the Bankruptcy Court ordered that all relief sought against Ditech be denied due to lack of jurisdiction.

The Debtor's Complaint contains four counts: 1) wrongful foreclosure in equity, 2) breach of good faith and fair dealing, 3) violation of the Missouri Merchandising Practices Act (the "MMPA"), and 4) unjust enrichment against Ditech.

The Debtor continues to live in the Property without paying any funds to the Bank.

**BANKRUPTCY COURT ORDER**

After a trial on the matter, the Bankruptcy Court found that neither the evidence nor the law supported the idea that the Bank lulled the Debtor into believing that if she paid the amount indicated on the July 3 Statement, the foreclosure sale would not take place. It concluded that the fact that the Debtor followed up with the Bank to verify the reinstatement amount demonstrated that she knew she was not entitled to rely on the July 3 Statement. Additionally, the Bankruptcy Court concluded the Bank did not waive its right to timely payments by sending the July 3 Statement because at no time did the Bank act in a manner inconsistent with that right. The Bankruptcy Court therefore denied the relief sought by the Debtor for wrongful foreclosure in equity.

The Bankruptcy Court also denied the relief sought for breach of good faith and fair dealing under Missouri law. It concluded that the Bank had the right to accelerate the Second Mortgage and foreclose because the Debtor was delinquent in her payments.

The Bankruptcy Court set out the elements of the MMPA and found that the element of causation was not established. The cause of the Debtor's loss was her delinquency on her payments, not the incorrect amount appearing on the July 3

4

Statement. Therefore, the Bankruptcy Court denied the relief sought by the Debtor under the MMPA.

Finally, the Bankruptcy Court found that the Debtor's claims against the Bank under the Truth in Lending Act ("TILA") or the Real Estate Settlement Procedures Act ("RESPA") were barred. The statute of limitations pertaining to these alleged violations expired, so the relief requested was denied.

**DISCUSSION**

The Debtor argues that the Bankruptcy Court erred in concluding that the Debtor was advised by the Bank that the July 3 Statement was inaccurate. The Bank counters that the Debtor was in contact with the Bank prior to remitting her alleged reinstatement amount, and was advised to obtain updated figures. The record supports the Bankruptcy Court's conclusion in favor of the Bank. The Debtor stipulated that "KeyBank advised Plaintiff that she had to contact KeyBank's foreclosure counsel to obtain a written payoff statement that included legal costs and fees." The notes from the Bank's telephone records, a stipulated exhibit, indicate that the Debtor was so advised. Nowhere in the Debtor's briefing does she dispute that. The call notes also establish that the Debtor called the Bank's foreclosure department as instructed; that very fact contradicts her position that the Bank did not advise her of the inaccuracy of the July 3 Statement. Finally, while there is no evidence proving the Debtor's receipt of the Reinstatement Notice, there is evidence that the Bank advised her that the correct amount would be forthcoming in a letter. Therefore, we find that the Bankruptcy Court's conclusion that the Debtor was advised by the Bank about the inaccuracy of the July 3 Statement was not clearly erroneous.

The Debtor also contends that the Bankruptcy Court erred in determining that the Bank was excused from sending an accurate statement to the Debtor. The Bankruptcy Court relied on federal disclosure requirements to reach its conclusion: a periodic statement need not be sent for an account if the creditor deems it uncollectible or if delinquency collection proceedings have been instituted. 12 CFR §1026.5(b)(2)(i). In this case, the Debtor was in default and the Bank had commenced collection efforts. The Debtor concedes these facts. We therefore concur with the Bankruptcy Court's finding that the Bank was not legally required to send a statement to the Debtor.

The Debtor argues in the alternative that whether the Bank was required to provide her with a statement is irrelevant — what is relevant is that the Bank was the only party possessing the information regarding the reinstatement amounts and was obligated under Missouri law to accurately disclose it, citing Mo. Rev. Stat. §408.554 of the Missouri Statutes. That section, however, pertains to notices of default, not reinstatement, and states that after a borrower has been in default for ten days for failure to make a required payment, a lender *may* give the borrower the notice described therein. §408.554.1 (emphasis added). We acknowledge that the Bank had knowledge superior to that of the Debtor, and perhaps should have followed up with her by phone in addition to mailing the Reinstatement Notice. Nevertheless, we affirm the Bankruptcy Court's legal conclusion that the Bank did not violate any relevant statute or duty in connection with providing reinstatement information to the Debtor.

The Debtor contends that the Bankruptcy Court erred in concluding that she failed to meet her burden of proving wrongful foreclosure in equity. Under Missouri law, if a mortgagee had the right to foreclose, but the sale was otherwise void or voidable, then the remedy is a suit in equity to set the sale aside. *Dobson v. Mortgage Elec. Registration Sys., Inc./GMAC Mortgage Corp.,* 259 S.W.3d 19, 22 (Mo. Ct. App. 2008). This remedy can only be invoked if fraud, unfair dealing or

mistake was involved in the trustee's sale. *Ice v. IB Property Holdings, LLC*, 2010 WL 1936175 \*3 (W.D. Mo. May 13, 2010)(citations omitted). One example of unfair dealing in this context is when the mortgagee lulls the mortgagor into a sense of security and then forecloses under the deed of trust, without giving actual notice to the mortgagor. *Shumate v. Hoefner*, 347 Mo. 391, 395 (1941).

The Debtor asserts that the Bank's words and conduct lulled her into believing that the property would not be foreclosed or that someone would follow-up with her prior to the foreclosure sale if the sums she tendered were insufficient to reinstate the Second Mortgage. She cites *In re Keith*, 211 B.R. 355 (Bankr. W.D. Mo. 1997), as a case directly on point, but the case can be distinguished. In *Keith*, the debtor received two separate communications from two different branches of the bank holding the deed of trust securing her home loan. One branch sent the debtor a letter notifying her that a foreclosure sale would take place on October 24, 1996. The other branch sent her a default notice informing her that she could cure the default by paying a certain amount no later than November 5, 1996. In reliance on the latter, the debtor made the required payment in October, but the foreclosure sale took place on October 24. Unlike the Debtor in this case, the debtor in *Keith* testified that she believed if she made all her past due payments by November 5 that she would have cured the default. The court was convinced from the debtor's testimony that the information given to the debtor was confusing, and that the debtor was not sophisticated enough to understand that communication inconsistencies may exist between different branches of a bank. The court found that a letter informing the debtor that she had additional time to cure a default, mailed after notice of a foreclosure sale, could well have lulled her into a sense of security and made her believe the sale had been postponed. *Id.* at 358.

Such is not the case here. The Debtor did not testify at the hearing, so there was no testimony as to the Debtor's confusion or beliefs which the Bankruptcy

Court could consider. The only evidence on which the Bankruptcy Court could rely was the conduct of the Bank and of the Debtor as established by the written record. The Bank followed its standard procedures insofar as it mailed the usual and customary monthly statement to the Debtor, kept records of its telephone conversations with the Debtor, mailed the detailed Reinstatement Notice to the Debtor, and rejected the insufficient payment made by the Debtor. Most significant is the undisputed fact that the Bank informed the Debtor that the amount stated in the July 7 Statement was incorrect. There is no evidence that the Bank's foreclosure notice and procedures were deficient. While the Bank could have been more diligent in responding to the Debtor's phone calls, there is no evidence of unfair dealing or fraud on its part. Regarding the Debtor's conduct, the record established that she was in default, that she called the Bank's foreclosure department to verify the reinstatement amount, and that she was informed that she would soon be receiving a letter with the corrected amount. Despite being informed, she decided to send an amount that was insufficient to reinstate her loan. From both a legal standpoint and a practical one, the Debtor cannot rely on tendering an amount she knew was insufficient to reinstate her mortgage in order to set aside the Foreclosure Sale later. The record supports the Bankruptcy Court's conclusion that she could not have been lulled by the Bank into a false sense of security regarding the Foreclosure Sale.

With respect to the Debtor's claims in her Complaint related to the MMPA and the Bank's breach of its duty of good faith, those claims have been abandoned because she did not address them in her appellate brief. Even if they had not been abandoned, the Debtor would be unable to prove the MMPA's required element of causation. *See* Mo. Rev. Stat. §407.025.1 (to maintain a claim under the MMPA, the claimant must demonstrate that he or she purchased merchandise for personal, family or household use, and suffered an ascertainable loss caused by an unfair practice). As noted above, the record demonstrates that the loss of the Debtor's property was caused by her default in her payments, not as a result of the Bank's

8

fraud or deceptive practices. *See Williams v. HSBC Bank USA, N.A.*, 467 S.W.3d 836, 843 (Mo. Ct. App. 2015)(MMPA claim denied since foreclosure occurred because debtor was delinquent in mortgage payments, not due to bank's alleged violations).

Finally, the Bankruptcy Court did not err in concluding that the Debtor's claims under TILA and RESPA are time-barred. Pursuant to 15 U.S.C. §1640(e), TILA actions must be brought within one year of the alleged violation, in this case, either July 3, 2017 (the date of the initial cure statement), or July 18, 2017 (the date of the foreclosure sale). Likewise, under 12 C.F.R. §1024.35(g)(iii), a Notice of Error for an alleged RESPA violation must be sent to the creditor within one year. The statute of limitation on the TILA claim has expired, and there is no evidence that the Debtor ever sent the Bank a Notice of Error under RESPA.

For the foregoing reasons, we affirm the Bankruptcy Court's order denying all relief requested by the Debtor in her Complaint.

———————————————————